OPINION OF THE COURT
Martin Schneier, J.
In this divorce action the plaintiff wife moves to confirm the *985 report of the Judicial Hearing Officer dated November 3, 1989 which vacated an arbitration award dated April 7, 1987.
The plaintiff wife and defendant husband were married on March 18, 1974, in Brooklyn, New York. There are three issue of the marriage, namely: Rivka, born February 11, 1975; Moshe, born September 28, 1976, and Nosson, born January 4, 1980. The plaintiff is a high school graduate who works as a Yiddish-speaking teacher in a religious school and earns approximately $15,000 annually. The defendant is also a high school graduate who works as an office clerk and also earns approximately $15,000 per year. The sole marital asset is a one-family house located at 1439 East 7th Street, Brooklyn, New York. For the past three years, it has been occupied by the plaintiff and the three infant issue. The fair market value of the house is $175,000 to $200,000. There is no mortgage, but the parties owe $16,000 to relatives for personal loans used to purchase the house.
On February 9, 1986, the plaintiff commenced this action for divorce.
On September 29, 1986, the parties signed a binding arbitration agreement to, "settle the arguments, claims and all disputes that are between us before the Rabbinical Court” and agreed that "any decision” of the Rabbinical Court "will be obeyed by us.” Each party selected one Rabbinical arbitrator and these two arbitrators selected a third. Shortly after selection of the panel was completed, the parties began attending sessions of the Beth Din or Rabbinical Court. Each party was represented by a Yiddish-speaking religious representative. A religious oath was taken by the parties prior to commencing the first session. Each session lasted several hours and cost each party $1,000 per session. The sessions were conducted in the Yiddish language.
On February 19, 1987, after six sessions with the Beth Din had been completed, the plaintiff moved for pendente lite relief, and did not disclose that there was a pending arbitration proceeding.
On March 12, 1987, in open court, the plaintiff was granted the pendente lite relief of exclusive occupancy of the marital residence, custody, unapportioned child support and maintenance in the sum of $100 per week and liberal visitation was granted to the defendant.
The pendente lite order was entered on April 7, 1987, which was, ironically, the same day that the Beth Din issued its *986 award. The Beth Din, in its decision, awarded the parties joint custody with physical custody to the plaintiff and granted the defendant extensive visitation. The defendant was ordered to pay $100 a week child support and to pay for medical coverage and tuition for the children. The Rabbinical Court also ordered the parties to vacate the marital residence and that it be sold with the proceeds "deposited with the Beth Din.” A religious divorce (Get) was then to "be delivered” and the proceeds thereafter were to be divided, $50,000 to the plaintiff and the balance to the defendant.
On April 30, 1987, plaintiff and defendant both appeared in Family Court, Kings County, on plaintiffs petition, and a stipulation was entered into between the parties modifying the existing pendente lite visitation schedule.
On May 11, 1987, the defendant moved to confirm the award of the Beth Din and to vacate the pendente lite award, and the plaintiff then cross-moved to vacate the award of the Beth Din. This motion and cross motion were referred to a Judicial Hearing Officer to hear and report. After the hearing the Judicial Hearing Officer submitted his written report to this court.
CONCLUSIONS OF LAW
Our State has long sanctioned arbitration as an effective alternative method of settling disputes in a nonjudicial forum (see, Matter of Goldfinger v Lisker, 68 NY2d 225 [1986]; Matter of Sprinzen [Nomberg], 46 NY2d 623 [1979]). Arbitration panels, which sit as courts of equity (see, Matter of Board of Educ. v Dover-Wingdale Teachers’ Assn., 95 AD2d 497 [2d Dept 1983], affd 61 NY2d 913 [1984]), are afforded substantial leeway to grant remedies, even beyond those requested by the parties (see, Matter of Faberge, Inc. [Felsway Corp.] 149 AD2d 369 [1st Dept 1989]). The courts will not sit as courts of review of the merits of an arbitration award (see, Matter of Board of Educ. v Dover-Wingdale Teachers’ Assn., supra) or of the procedural standards used by the arbitrators (see, Board of Educ. v Yonkers Fedn. of Teachers, 46 NY2d 727 [1978]) or review mistakes of law or facts (Matter of Sprinzen [Nomberg] supra; Kingsbridge Center v Turk, 98 AD2d 664 [1st Dept 1983]).
It is a legal axiom that the determination by an arbitrator should not be lightly set aside (see, Institute of Intl. Educ. [Permanent Mission] 118 AD2d 433 [1st Dept 1986], lv denied *987 68 NY2d 608). When a dispute has been moved to arbitration, the party seeking to vacate the ultimate award must meet a heavy burden to vacate that award (see, North Syracuse Cent. School Dist. v North Syracuse Educ. Assn., 45 NY2d 195 [1978]).
The statutory grounds for vacating or modifying an arbitration award enumerated in CPLR 7511 (b) (1) (i) through (iv) are: that the rights of the party were prejudiced by corruption, fraud, or misconduct in procuring the award; partiality of an arbitrator; that the arbitrator exceeded his power or failed to make a final and definite award; or a procedural failure that was not waived.
With respect to CPLR 7511 (b) (1) (i), the plaintiff claims to have been coerced by the threat of a "Sirov.” A Sirov is a prohibitionary decree that subjects the recipient to shame, scorn, ridicule and public ostracism by other members of the Jewish religious community. While the threat of a Sirov may constitute pressure, it cannot be said to constitute duress.
Generally, misconduct, corruption, or fraud in procuring the award involves ex parte communications by the arbitrators with litigants; unauthorized independent investigation by an arbitrator (Matter of Goldfinger v Lisker, supra); failure to allow a party legal representation or failure to permit a party to introduce evidence. None of these occurred in the instant proceeding.
With respect to CPLR 7511 (b) (1) (ii), the plaintiff does not contend that any of the members of the panel were not impartial.
With respect to CPLR 7511 (b) (1) (iii), the plaintiff contends that the Beth Din exceeded its authority in making the award in that she expected the panel only to grant a religious divorce and not to decide matters of custody, visitation and economics.
An arbitration agreement which explicitly extends to "any and all disputes between the parties” has been found valid where there exists a "reasonable relationship” between the subject matter of the dispute and the original agreement of the parties (see, Pepsi-Cola Metro. Bottling Co. v Columbia-Oxford Beverages, 100 AD2d 868 [2d Dept 1984]).
A panel of arbitrators will only be restricted by specific limitations explicitly set forth in the arbitration agreement itself (see, Matter of Silverman [Benmor Coats], 61 NY2d 299 [1984]; Lehman v Sage Metal Trading Corp., 121 AD2d 889 *988 [1st Dept 1986], lv denied 68 NY2d 609). If no such limitation exists, a broadly and generally phrased arbitration clause will be afforded the full import of its wording (see, Pepsi-Cola Metro. Bottling Co. v Columbia-Oxford Beverages, supra). Furthermore, any contention that a claim proposed to be submitted to arbitration is in excess of the arbitrator’s power is waived unless raised by an application for a stay in the proceedings (see, Matter of Silverman [Benmor Coats], supra).
In the case at bar, the underlying subject matter of the dispute was the dissolution of the marriage between the parties. The issues of custody, visitation and economics certainly have a "reasonable relationship” to the dissolution proceedings. Additionally, the plaintiff participated in, and paid for, six full sessions of arbitration. When she did appear in this court for relief, it was not for a stay of the arbitration proceedings, but was for a determination of the identical issues which were before the Beth Din.
Additionally, an arbitrator’s award will be set aside as being in excess of authority only if it is, "totally irrational” (see, Matter of Silverman [Benmor Coats] supra; Board of Educ. v Yonkers Fedn. of Teachers, supra; Matter of Board of Educ. v Mt. Sinai Teachers’ Assn., 139 AD2d 733 [2d Dept 1988]; Matter of Grace Plaza v Turner, 130 AD2d 746 [2d Dept 1987]). It can hardly be argued by the plaintiff that the Beth Din award was "totally irrational” when it addressed all the relief she requested in her pendente lite application and many of the awards were strikingly similar.
With respect to the plaintiff’s objection to the proceedings, pursuant to CPLR 7511 (b) (1) (iv), in that they were conducted in Yiddish, the plaintiff waived all her technical objections by her continual participation for six full sessions. It is undisputed that the plaintiff has knowledge of Yiddish and teaches elementary school in that language. Additionally, she had the opportunity to consult with her representative before and after each session of the Beth Din. The plaintiff made no effort to correct this technical flaw, or any other defects, by seeking a stay of the proceedings. It appears that her main objection was that, "nothing was being done and it was dragging on and I did not have the money anymore to go back.”
The plaintiff correctly argues that the grounds for vacating or modifying an arbitration award are not limited to the provisions of CPLR 7511.
*989 The plaintiff claims that the defendant, by his "conduct” in this action and in the Family Court proceeding, waived his right to proceed in the arbitration forum. While it is true, that a party who affirmatively uses the judicial processes by commencing a lawsuit generally waives the right to arbitration, this does not apply to the defendant in the judicial proceeding (see, Sherrill v Grayco Bldrs., 64 NY2d 261 [1985]; De Sapio v Kohlmeyer, 35 NY2d 402 [1974]; Sullivan v Kisly, 93 AD2d 783 [1st Dept 1983]). Unless a defendant "aggressively participates” in the new litigation he does not lose the right to arbitrate (see, Sherrill v Grayco Bldrs., supra).
In the case at bar, the defendant’s posture in both Supreme Court and Family Court actions, commenced by the plaintiff, has been predominantly defensive and, therefore, does not constitute a waiver.
In a custody dispute, an agreement between a husband and a wife will be upheld so long as the agreement is in the best interest of the children, however, the court retains supervisory power in its capacity as "parens patriae.” To the extent that such award conflicts with the best interest of the children the agreement is a nullity insofar as it concerns the children. Hence, upon showing that a provision of an award might be adverse to the best interest of a child (but not simply because it "affects” the child) the court may intervene (see, Nestel v Nestel, 38 AD2d 942 [2d Dept 1972]; Agur v Agur, 32 AD2d 16 [2d Dept 1969]).
In the case at bar, the Beth Din award of joint custody adversely affects the best interest of the children. These parties have been embroiled in long and embittered litigation involving the children and there exists severe antagonism towards each other. In view of this, joint custody is inappropriate (see, Bliss v Ach, 56 NY2d 995 [1982]; Braiman v Braiman, 44 NY2d 584 [1978]; Trapp v Trapp, 136 AD2d 178 [1st Dept 1988]). Therefore, the Beth Din award regarding custody is vacated and the plaintiff is granted custody.
With respect to child support and maintenance, it is undisputed that the plaintiff and the defendant both earn approximately $300 per week. While the best interest of the children assures the court a perpetual role in an infant’s welfare, a dispute over child support is one between the custodial and noncustodial parent and can be agreed upon contractually or by arbitration (see, Schneider v Schneider, 17 NY2d 123 [1966]; Nestel v Nestel, supra; Agur v Agur, supra). *990 Ironically, this court and the Beth Din awarded the plaintiff the identical amount for weekly support. Therefore, the award of child support by the Beth Din is confirmed. The court also confirms the portion of the Beth Din award making the defendant financially responsible for the children’s medical care and school tuition.
With respect to the Beth Din’s disposition of the marital residence, it is the plaintiff’s contention that these provisions are not in the best interest of the children because she would have to vacate an affordable house, which the children are comfortable in, to relocate to much more expensive housing.
The defendant argues that the Beth Din award is not subject to judicial review and that he requires the larger share of the proceeds to meet his support obligation. He adds that the plaintiff can use her share of the proceeds to supplement her increased housing costs. Notwithstanding this argument, the defendant suggests that if it is not in the best interest of the children to vacate immediately, the sale of the marital residence can be deferred until such time as each child has reached maturity and that at that time the proceeds can be divided pursuant to the Beth Din award.
The court agrees with the plaintiff that the immediate needs of the custodial parent to occupy the marital residence outweigh the immediate needs of the defendant for his equitable share of the proceeds from the sale of the marital residence (see, Hillmann v Hillmann, 109 AD2d 777 [2d Dept 1985]; Damiano v Damiano, 94 AD2d 132 [2d Dept 1983]). Therefore, adopting the suggestion of the defendant, the court awards the plaintiff exclusive occupancy of the marital residence until the youngest child reaches the age of 18. At that time, the provisions of the Beth Din award with respect to the sale of the marital residence and distribution of the proceeds shall take effect.
Accordingly, the provisions of the Beth Din award consistent with this decision are confirmed and the provisions of the pendente lite order inconsistent with this decision are vacated.