Teri BATES and Kelli Ogden *v.*
Andre E. McNEIL, Chancery Judge

94-74    94-84                                  888 S.W.2d 642

Supreme Court of Arkansas
Opinion delivered December 5, 1994

Central Arkansas Legal Services by: *Sandra A. DeBoer* and *Griffin J. Stockley*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The petitioners, Teri Bates and Kelli Ogden (Woodruff), ask this court to issue a writ of prohibition against the respondent, Faulkner County Chancellor Andre E. McNeil, and in their petitions allege that the chancellor was wholly without jurisdiction to order that they be taken into custody by the Sheriff of Faulkner County. We granted Ms. Bates's request for temporary stay on January 31, 1994, and granted Ms. Ogden's kindred request on February 14, 1994, allowing all parties to brief the issue. Later, we permitted the petitioners to consolidate their pleadings since they presented the same question. Finding the trial court exceeded its jurisdiction, we treat the parties' petition as one of certiorari and grant the writs in their favor.

On March 10, 1992, Petitioner Kelli Ogden (now Woodruff) filed a petition in Faulkner County Chancery Court for an order of protection on behalf of herself against her husband, Bobby Ogden, alleging that he had threatened her life. After being assigned to Chancellor Andre E. McNeil's division, no further proceedings were had on the case.

On August 3, 1992, Petitioner Teri Bates filed a petition for an order of protection on behalf of herself and her minor children in Faulkner County Chancery Court against J.T. Bates, alleging domestic abuse, and later on the same date, the respondent, Chancellor Andre E. McNeil, issued an *ex parte* temporary order of protection. Following a hearing, the chancellor entered an order of protection on August 12, 1992, in which Ms. Bates was assessed and ordered to pay $84.25 in court costs within thirty days.

Nothing further transpired with reference to either petitioner until December 10, 1993, when the chancellor entered separate written orders for Ms. Bates and Ms. Ogden to appear in his court to show cause why each should not be held in contempt. The orders also directed that the sheriff take both parties into custody and keep them safely to appear on January 12, 1994, and provided that they could be admitted to bail upon each posting a $200 cash bond. The only difference in the two orders lay in the alleged basis for the contempt charge: Ms. Ogden had allegedly abused the court's process by causing the clerk to file a petition

for order of protection without having completed the application process for obtaining the order, while Ms. Bates allegedly failed to pay court costs as ordered. Apparently, neither of these two orders were served, as identical orders were issued on January 13, 1994, again directing the sheriff of Faulkner County to take the respective parties into custody and keep them safely to appear before the court on March 30, 1994, unless the parties posted cash bonds in the amount of $200.00 each. A search of the record fails to reveal a return of these orders by the sheriff.

The petitioners have requested relief from the chancellor's orders to take them into custody of the Faulkner County Sheriff by way of a writ of prohibition. A more appropriate remedy exists in certiorari, for we have said that a writ of prohibition cannot be invoked to correct an order already entered, *Wasson* v. *Dodge*, 192 Ark. 728, 94 S.W.2d 720 (1936), and where, as here, the lower court's order has been entered without or in excess of jurisdiction, we can carve through the technicality and treat the application as one for certiorari. *Arkansas Dep't of Human Servs.* v. *Templeton*, 298 Ark. 390, 769 S.W.2d 404 (1989); *Wasson, supra.*

We discussed certiorari at length in *Skokos* v. *Gray*, No. 94-952 (November 7, 1994), and *Gran* v. *Hale*, 294 Ark. 563, 745 S.W.2d 129 (1988), referencing our holding in *State* v. *Nelson*, 246 Ark. 210, 438 S.W.2d 33 (1969):

> Certiorari lies to correct proceedings erroneous upon the face of the record when there is no other adequate remedy. It is available in the exercise of superintending control over a tribunal which is proceeding illegally where no other mode of review has been provided. Certiorari lies where there is a want of jurisdiction or an act in excess of jurisdiction which is apparent on the face of the record. It is not available to look beyond the face of the record to ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts or review the exercise of a court's discretionary authority.

Granted, disobedience of any valid order of a court having jurisdiction to enter it may constitute contempt, punishment for which is an inherent power of the court. *Gatlin* v. *Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). It is also true that we basically review contempt proceedings under the rules and statutes pertaining to

appeals, not by certiorari, as stated in *Frolic Footwear, Inc.* v. *State*, 284 Ark. 487, 683 S.W.2d 611 (1985). Here, however, we are confronted with a situation in which the chancellor has issued his orders citing the parties to show cause why they should not be held in contempt, while at the same time ordering them to be held in custody until the time set for their hearing unless released· on a preset bond.

In *Foreman* v. *State*, 317 Ark. 146, 875 S.W.2d 853 (1994), we issued a writ of certiorari to require the trial judge to reconsider his setting of an appearance bond. We determined that the remedy of an appeal would have been useless because the petitioner would have had to remain incarcerated until tried without proper consideration of his request for release on bond, and granted certiorari where there was no other remedy or effective means of review. The same can be said here — an appeal would be useless as the parties could remain incarcerated until the time for their hearing, unless they were able to pay the cash bonds. In short, certiorari is the proper remedy.

The chancellor submits that his power to order Ms. Bates's and Ms. Ogden's arrests and custody in this situation is provided in Ark. Code Ann. § 16-10-106 (1987), which states that:

> [a]ll courts shall have the power to issue all writs and process which may be necessary in the exercise of their respective jurisdiction, according to the principles and usages of law.

Yet, the chancellor, in exercising his authority, makes no mention of Ark. Code Ann. § 16-10-108(c) (1987), which provides that:

> [c]ontempts committed in the immediate view and presence of the court may be punished summarily. *In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his defense.*

(Emphasis added.)

Although Ark. Code Ann. § 16-10-106 provides that all courts shall have the power to issue process which may be necessary in the exercise of their respective jurisdictions, it does not provide the trial court with *carte blanche* authority to issue orders

of body attachment, detention, and custody, while ignoring portions of statutory provisions relating to contempt proceedings, and without affording procedural protections of due process of law to the parties being placed in arrest and custody. It is axiomatic that "fundamental requirements of due process require the opportunity to be heard at a meaningful time and a meaningful place before a person can be deprived of life, liberty, or property." *Franklin* v. *State*, 267 Ark. 311, 590 S.W.2d 28 (1979).

■ Our rationale in *Franklin* closely resembles the United States Supreme Court's recognition in *Young* v. *United States ex. rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800 (1987), in response to out-of-court contempts, that "contempt proceedings are sufficiently criminal in nature to warrant the imposition of many procedural protections." The chancellor argues that the contempts of court allegedly committed by Ms. Bates and Ms. Ogden were "indirect criminal commissions and therefore crimes," and cites the United States Supreme Court case of *U.S.* v. *Dixon*, 113 S. Ct. 2849 (1993), in support of his position that under our statutes, he is vested with the authority to issue orders of arrest and detention subject to the parties' release on bond — the same as in a criminal case. We cannot agree that, at this juncture, Ms. Bates and Ms. Ogden are charged with "crimes"; however, they are the subjects of contempt proceedings which are criminal in nature and should be treated as such.

■ In *Fitzhugh* v. *State*, 296 Ark. 137, 752 S.W.2d 275 (1988) we made note that the substantive difference between civil and criminal contempt often becomes blurred and that the purpose of a criminal contempt proceeding is to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. Civil contempt proceedings, on the other hand, are to be instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of those parties. Where the contempt proceedings are of a criminal nature, the alleged contemnors should be afforded the protections that the constitution requires in criminal proceedings. *Fitzhugh* v. *State, supra.*

■ Our rules of criminal procedure serve as a useful guideline for procedural protections in this instance. Rule 8.1 provides that a detained person shall be taken before a judicial

officer without unnecessary delay. This rule was designed to afford an arrestee protection against an unfounded invasion of liberty and privacy. *See Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978), *rev'd on other grounds*, 267 Ark. 504, 593 S.W.2d 156 (1980). Rule 9 provides that a judicial officer shall set money bail only after he determines that no other conditions will ensure the appearance of a defendant in court. The rule further provides that, if it is determined that money bail should be set, the judicial officer should, in determining the amount of bail, take into account all facts relevant to the risk of wilful nonappearance of the party. Here, neither Ms. Bates nor Ms. Ogden were afforded an opportunity to be heard at a meaningful time or a prompt first appearance. Instead, they were ordered arrested and held for a show cause hearing on a date more than thirty days later in the first orders, and on a date more than sixty days later in the second orders, unless they posted a $200 cash bond to effect their release. In setting bail, the chancellor's orders fail to reflect that he took into consideration any facts relevant to the risk of nonappearance of the parties or the reasonableness of the amount of the required cash bond.

Suffice it to say, the court's orders of body attachment and arrest are devoid of fundamental due process which requires that the court give the parties an opportunity to be heard at a meaningful time, and that, if bond is to be set, the court follow the spirit of our criminal rules in determining an appropriate bond.

Under the circumstances, the trial court's orders were erroneous on their face, and for this reason, we hold the chancellor acted in excess of his jurisdiction.

Writ of certiorari granted.