Wanda LANCASTER *v.* Debbie J. WEST
and the Conway Board of Realtors

94-693                                    891 S.W.2d 357

Supreme Court of Arkansas
Opinion delivered January 23, 1995

*Bethune Law Firm*, by: *Ed Bethune* and *Russell L. Hunt*, for appellant.

*Henry & Henry*, by: *Robert W. Henry*, for appellee.

JACK HOLT, JR., Chief Justice. This is an appeal from a decision by the Faulkner County Chancery Court finding no grounds to set aside an award to appellee Debbie J. West by the Arbitration Panel of appellee Conway Board of Realtors.

The appellant, Wanda Lancaster, raises four points for reversal, contending (1) that the controversy at issue was an employer-employee dispute and therefore not subject to the provisions of

the Uniform Arbitration Act and that the trial court erred in finding that she had waived her right to object to arbitration by appearing at the hearing; (2) that the arbitration agreement of the Conway Board of Realtors requiring realtors to submit to mandatory arbitration does not apply to disputants who were members of the same realty firm and that the trial court erred in finding that she had waived her right to refuse arbitration by appearing at the hearing; (3) that, even if she were subject to arbitration, it was not established that she received sufficient notice and that the trial court erred in finding that she had waived notice by appearing at the hearing; (4) that she was deprived of a valuable property right without due process and by undue means in violation of the written agreement and Ark. Code Ann. § 16-108-212 (1987) because the arbitrators were not impartial, the notices given were insufficient and confusing, and she had no right to counsel or to call witnesses.

None of these arguments has merit, and we affirm the decision of the chancery court.

### Facts

Both Ms. Lancaster and Ms. West are licensed realtors. From January 25, 1991, until July 20, 1991, Ms. West, doing business as Classic Realty Company of Conway, employed Ms. Lancaster as a sales associate for Classic Realty. Before and after her employment with Classic Realty, Ms. Lancaster was a self-employed real estate broker. Both Ms. Lancaster and Ms. West had been members of the Conway Board of Realtors for some years prior to 1991.

On July 10, 1991, while employed by Ms. West, Ms. Lancaster secured an offer and acceptance executed by the buyers and the seller for the sale of a farm in Faulkner County. Ten days later, on July 20, 1991, she quit her position as sales associate with Classic Realty. Subsequently, on July 22, 1991, Ms. Lancaster procured a cancellation of the July 10 offer-and-acceptance contract by having the seller write "Void" on the instrument. On the same day, Ms. Lancaster arranged for the execution of a new offer-and-acceptance contract between the buyers and the seller for the purchase of the same farm. Ms. Lancaster refused to pay Ms. West her share of the commission on the sale.

Ms. West then filed a request for arbitration with the Grievance Committee of the Conway Board of Realtors on July 27, 1991. The committee determined that there was probable cause for a hearing, which the board scheduled for August 22, 1991. Ms. Lancaster received notice on July 29, 1991, and filed a reply and a letter to "Grievance Committee Members" on August 1, 1991.

Ms. Joyce Hall, the chair of the Arbitration Board, received three telephone calls from Ms. Lancaster prior to the hearing. In the first, on August 5, 1991, Ms. Lancaster requested that the hearing be held as soon as possible and that she be notified of the date. Ms. Lancaster phoned a second time to ask that the hearing be conducted as soon as possible. Then, on August 20, 1991, Ms. Lancaster phoned Ms. Hall a third time and notified her that she would be unable to appear at the hearing set for August 22 because she had to attend a funeral that day. With Ms. Lancaster's consent, the hearing was rescheduled for August 23, 1991, and a notice was sent dated August 22, 1991.

Ms. Lancaster appeared at the hearing on August 23, 1991. After receiving evidence and deliberating, the Arbitration Board unanimously awarded Ms. West $7,404.80, the amount she had sought from Ms. Lancaster. After Ms. Lancaster refused to pay the sum, Ms. West, on October 23, 1991, filed a petition in the Faulkner County Chancery Court to enforce the arbitration agreement, pursuant to Ark. Code Ann. § 16-108-216 *et seq.* (1987). A hearing was held before the court on November 5, 1993.

In its opinion filed on February 3, 1994, the chancery court found that Ms. West was entitled to the amount set forth in the August 23, 1991 "award of arbitrators." The court noted that Ms. Lancaster had argued that the arbitration panel's action was not binding on her under Ark. Code Ann. § 16-108-201 because she was Ms. West's employee at the time the dispute arose. Yet, the court observed, "[e]ven assuming without deciding that this contention has merit, it appears that [Ms. Lancaster] waived it by agreeing to submit disputes to arbitration and actively participating in this particular arbitration panel's hearing without ever raising any objections and specifically no objections on this point."

The formal decree was entered on March 7, 1994. From that decision, this appeal arises.

## *I. Applicability of Uniform Arbitration Act*

In her first point for reversal, Ms. Lancaster makes two related arguments. She contends that the chancery court erred in failing to find that the Uniform Arbitration Act was inapplicable under Ark. Code Ann. § 16-108-201 (1987) because the dispute was between employer and employee and, further, that the court erred in finding that Ms. Lancaster had waived her right to object to the Conway Board of Realtors' power to conduct an arbitration hearing by making an appearance.

The crucial question in this appeal concerns the applicability of the Uniform Arbitration Act. It is jurisdictional in character and must be resolved before other matters may be treated.

Although it was subsequently amended in 1993, the governing statutory provision concerning application of the Uniform Arbitration Act in 1991 read as follows:

> A written agreement to submit any existing controversy to arbitration or a written provision to submit any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; *provided, that this chapter shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.*

Ark. Code Ann. § 16-108-201(1987).[1] (Emphasis added.)

■  This court, citing the same statutory section, specifically held in *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985), that questions in the law of torts are not subject to written agreements to arbitrate. By the same token, employer-employee disputes, whether existing or prospective, were not, under § 16-108-201, subject to written agreements to arbitrate in 1991.

---

[1]The amended statutory section, Ark. Code Ann. § 16-108-201 (Supp. 1993), retains the bar against application of the Act to employer-employee disputes in cases involving "[a] written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing"; an "existing controversy" arising from an employer-employee dispute may now be submitted to arbitration.

Two offer-and-acceptance contracts are at issue here, and the question of employer-employee status is directly related to the question of which is the operative instrument giving rise to the controversy. The first, subsequently voided contract of July 10, 1991, was executed during the term of Ms. Lancaster's employment by Ms. West. According to Ms. Lancaster, Ms. West's cause of action is necessarily dependent upon that first document, which was executed when Ms. Lancaster was in Ms. West's employ, and it is of no moment that a second offer-and-acceptance contract was executed later.

The second contract, dated July 22, 1991, was executed after Ms. Lancaster had severed her relationship with Classic Realty. Contrary to Ms. Lancaster's position, the sale was consummated only through that instrument, and payment of commission was due only at that point. Consequently, Ms. West's cause of action (or, more precisely, grounds for complaint to the Arbitration Board) did not ripen until the second offer-and-acceptance contract had been executed and the realtor's commission was payable. Thus, the provisions of the Uniform Arbitration Act were applicable to the matter at hand.

Having determined that Ms. Lancaster was subject to the Act, it is unnecessary for us to consider the related issue of waiver, which would have been relevant only in the event that an employer-employee relationship had existed at the time the sale was consummated.

## II. Mandatory arbitration requirement

Ms. Lancaster contends in her second point for reversal that the mandatory arbitration requirement adopted by the Conway Board of Realtors does not apply to disputants who were members of the same realty firm and, further, that the chancery court's finding that, by her appearance, she had waived her right to refuse arbitration was error. This argument is premised on the assumption that Ms. Lancaster and Ms. West were members of the same realty firm at the time the cause of action arose. As discussed above, however, Ms. Lancaster was no longer associated with Classic Realty at the time the sale in question was consummated.

Article 14 of the *Code of Ethics* approved by the Professional Standards Committee and the Board of Directors of the

National Association of Realtors and adopted by the Conway Board of Realtors provides that:

> In the event of a controversy between REALTORS associated with different firms, arising out of their relationship as REALTORS, the REALTORS shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter.

As the parties were associated with different firms at the time the cause of action arose, the mandatory arbitration agreement was applicable.

### III. Notice and waiver

The third point concerns notice and waiver. Mrs. Lancaster asserts, first, that Ms. West failed to establish that adequate notice of the arbitration hearing was provided under Ark. Code Ann. § 16-108-205(1) (1987) or § 33(b) of the *Code of Ethics and Arbitration Manual* adopted by the Conway Board of Realtors. The statute requires that the arbitrators "cause notification to the parties to be served personally or by registered mail not less than five (5) days before the hearing." The manual provision specifies that "[t]he parties shall be given at least twenty-one days prior notice of a hearing."

According to Ms. Lancaster, inconclusive evidence was presented as to whether the notice dated August 1, 1991, had been mailed, personally served, or, indeed, delivered at all. Ms. Lancaster testified that she did not receive a copy of the formal written notice until the day of the hearing, although she stated that she was advised by telephone of the time and place of the scheduled August 22, 1991 hearing on the day before the hearing was to be held. Ms. Hall, chair of the arbitration panel, testified that Form No. 9, the official notice of the arbitration hearing, was sent to the parties on August 22, 1991, notifying them of the hearing to be held on the following day.

Ms. Lancaster's argument is misdirected. In the first place, arbitration is strongly favored by public policy in this state and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Dean Witter Reynolds Inc.* v. *Deislinger*, 289 Ark. 248, 711 S.W.2d 771 (1986). The party attempting to over-

turn an arbitration award — not, as Ms. Lancaster suggests, the party attempting to sustain it — bears the burden of proof. *Id.*

Further, it is undisputed that Ms. Lancaster phoned Ms. Hall on three occasions after responding to the initial notice on August 1, 1991. It is clear that she was aware of the August 22, 1991 hearing date when she phoned Ms. Hall on August 20, 1991, and told her that she would be unable to attend the scheduled meeting. It is apparent that Ms. Lancaster agreed to reschedule the hearing for August 23, 1991.

Moreover, it is unquestioned that Ms. Lancaster appeared before the arbitration panel on August 23, 1991. While she urges that the chancery court erred in ruling that she had waived notice by her appearance, the statute plainly supports the finding. Under Ark. Code Ann. § 16-108-205(1): "Appearance at the hearing waives notice." Whatever formal defects may have existed in the notice procedure, Ms. Lancaster cannot now assert them.

### IV. Impartiality of arbitrators

In her final point for reversal, Ms. Lancaster argues that she was deprived of a valuable property right without due process and by undue means because the arbitrators were not impartial, the notices given to her were insufficient and confusing, and she was extended no right to counsel or to call witnesses. The question of notice has been disposed of earlier.

Regarding the alleged partiality of the board, the party attempting to set aside the award on such a basis bears the burden of proof. *Chrobak* v. *Edward D. Jones & Co.*, 46 Ark. App. 105, 878 S.W.2d 760 (1994). Apart from Ms. Lancaster's assertion in her brief that it was her "belief that certain arbitration panel members were not impartial," no testimony was presented to demonstrate in what way partiality was shown. The interest, partiality, or bias that will suffice to overturn an arbitration award must be certain and direct rather than remote, uncertain, or speculative. *Dean Witter Reynolds Inc.* v. *Deislinger, supra.*

Finally, with respect to Ms. Lancaster's contention that she was denied the right to counsel and to call witnesses, the record reveals that the "Official Notice of Hearing (Arbitration)" — to which she responded on August 1, 1991 — explicitly pro-

vided that "[e]ither party may be represented by legal counsel" and that "[e]ach party shall arrange for his witnesses to be present at the time and place designated."

We hold that the chancery court did not commit reversible error.

Affirmed.

ROAF, J., not participating.