MAY CONSTRUCTION COMPANY, Inc. *v.*
The Honorable Morris THOMPSON, Judge

00-364                                           20 S.W.3d 345

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*Morris Thompson*, Judge;

*Grobmyer, Ramsay & Ross*, by: *Robert R. Ross*, for petitioner.

*Robinson, Staley, Marshall & Duke, P.A.*, by: *Robert L. Robinson, Jr.*, for respondent.

L AVENSKI R. SMITH, Justice. Petitioner May Construction Company ("May") filed this Petition for Writ of Prohibition in response to an order entered by the Pulaski County Circuit Court to compel discovery in an arbitration matter between May and Respondent Riverdale Development Company ("Riverdale"). May and Riverdale signed a contract for construction of a commercial office building on August 30, 1996. They included in the contract a term for mandatory binding arbitration for any breach-of-contract claims. As the project neared completion, May and Riverdale vigorously disputed each other's performance adequacy in that contract. The issue presented by this case is whether, on the face of the record before us, the Circuit Court committed a plain, manifest, clear, and gross abuse of discretion in ordering May to comply with discovery requests in a civil action which was simultaneously pending in arbitration. We hold it did not and deny the writ.

On May 13, 1999, May filed a demand for arbitration with the American Arbitration Association, claiming that Riverdale had failed to pay approximately $33,000 owed under the contract. Riverdale responded by filing a complaint in the Pulaski County Circuit Court on May 25, 1999, alleging that May failed to perform certain requirements under the contract and also acted negligently and deceitfully in the performance of the work and construction of the building. Riverdale followed this complaint with a Motion to Stay Arbitration filed on June 1, 1999. On that same day, the circuit court held a hearing on the motion by teleconference. The circuit court denied Riverdale's Motion to Stay Arbitration in an order dated June 7, 1999. The court also stayed discovery in the circuit court action pending resolution of the arbitration proceeding. However, the circuit court's order reserved the right to the court to compel discovery in the arbitration matter should the parties apply to the court and indicate that the arbitration discovery had become ineffective.

On June 21, 1999, May filed a Motion to Dismiss the circuit court complaint alleging that the complaint filed by Riverdale in

circuit court sought to litigate issues related to those in the arbitration proceeding, and that Riverdale's response to and counterclaim in the arbitration request acted as an irrevocable election that rendered the pleadings in circuit court moot. Riverdale responded on June 30, 1999, and argued that while its Motion to Stay Arbitration was denied, the circuit court did not stay discovery in that lawsuit and would direct discovery upon application by either party during arbitration. The record and abstract do not indicate whether the circuit court ever ruled on this motion.

Under the auspices of the arbitrator, the parties initiated discovery. However, according to Riverdale's pleadings, May failed to comply with repeated requests for certain discovery, thus requiring Riverdale to seek an order from the arbitrator on October 14, 1999, to compel discovery. The motion contained requests for specific documents, which Riverdale had previously requested but May had failed to provide. On November 1, 1999, Arbitrator Bill S. Clark granted Riverdale's motion ordering May to provide all of the items requested in the motion. At Riverdale's request, the arbitrator also issued a subpoena *duces tecum* to William "Bud" Oldner, a design engineer with Ruffin Building Systems ("Ruffin") who May had hired. Following the issuance of the subpoena, Riverdale sent three letters to Ruffin's attorneys requesting Oldner's presence at a deposition and requesting the documents indicated in the subpoena. Apparently, Ruffin and Oldner ignored these requests and the subpoena.

Due to this failure to comply, Riverdale filed with the arbitrator a Motion to Dismiss or Alternatively for Sanctions on November 15, 1999, requesting May's demand for arbitration be dismissed with prejudice for failure to comply with discovery and requesting sanctions for failure to comply with the arbitrator's orders. Riverdale responded on December 1, 1999, contending it had no responsibility for Ruffin's or Oldner's failures to comply with the discovery requests. The record and abstract are devoid of any resolution to these motions. However, May contends in its brief that the arbitrator, at a hearing on January 20, 2000, refused to enforce his earlier order or subpoena based on the fact that Ruffin and Oldner were located in Louisiana and were outside of the arbitrator's "jurisdiction." May further contends that the arbitrator decided to allow Oldner to testify without producing the requested documents because Riverdale could have deposed Oldner in Octo-

ber, 1999. The record and transcript, however, do not contain any orders or transcripts of the arbitrator's supposed ruling on this issue.

On January 21, 2000, Riverdale filed its Motion to Compel Discovery in the Pulaski County Circuit Court after May and Ruffin failed to comply with the previous orders and subpoenas from the arbitrator. Riverdale argued in its motion that May should not be allowed to recover the alleged breach damages, nor should Oldner or any other representative of Ruffin be allowed to testify for May at the arbitration hearing without producing the discovery requested of it or its suppliers to Riverdale. Riverdale also filed a Motion for Continuance in the arbitration on January 31, 2000, due to the pending motion in circuit court. May responded to this motion on February 2, 2000, arguing that the arbitrator had already denied essentially the same motion. Furthermore, May argued that Riverdale made the discovery requests to entities and people who were outside the court's jurisdiction, and that the circuit court did not have the power to order discovery in the underlying matter because of the arbitration. May also argued that Riverdale's motion was an attempt to delay the arbitration due to its own failure to properly perform permitted discovery in time before the arbitration hearing scheduled for February, 2000.

The circuit court held a hearing on February 3, 2000, on Riverdale's discovery motion. Apparently, the circuit judge announced his ruling from the bench and then issued the orders, nunc pro tunc, on March 2, 2000, requiring May to comply with Riverdale's discovery requests in the arbitration. Interestingly, the circuit court issued three orders on March 2, each requiring the parties to perform certain actions. Specifically, in the first order, the circuit court ordered that May was to collect and have available for inspection and copying all of its documents relating to the contract dispute within three days of the order, and that Riverdale could proceed at its option to redepose Oldner and to obtain relevant information from Ruffin. Alternatively, May would be barred from using information or testimony from Ruffin during the arbitration hearing if the information were not provided. Also, the circuit court ordered the arbitration stayed until May complied with that order.

In its second order, the court ordered Riverdale to file its Notice of Deposition of Oldner in that court and in the appropriate

Louisiana court. The circuit court again ordered that May produce the requested documents, and also took under advisement Riverdale's request to disqualify Ruffin's representatives from testifying as well as Riverdale's request that its Requests for Admissions be deemed admitted for May's failure to timely answer them. The circuit court further noted that it retained jurisdiction over the parties and the subject matter to enforce the order, and the court stayed the arbitration proceeding pending resolution of the discovery dispute.

In its third order, which does not bear the court's file mark, the court again ordered May to produce all requested documents and vendor files. The court then found that May had refused to answer Riverdale's first Request for Admissions, and the court found that these requests were deemed admitted. Finally, the court again ordered that no representative from Ruffin could testify at the arbitration hearing until Ruffin furnished all of the requested documents. May then filed this Petition for Writ of Prohibition on March 24, 2000, and Riverdale responded on March 31, 2000.

*Standard of Review*

While May seeks a writ of prohibition in its petition, we will treat the petition as one for a writ of certiorari. A writ of prohibition will not lie for actions already taken. *Oliver v. Pulaski County Circuit Court*, 340 Ark. 681, 13 S.W.3d 156 (2000). We recently reiterated the requirements for a writ of prohibition noted in *Pike v. Benton Circuit Court*, 340 Ark. 311, 10 S.W.3d 447 (2000), where we stated:

> A writ of prohibition is extraordinary relief which is appropriate only when the trial court is wholly without jurisdiction. *Henderson Specialties, Inc. v. Boone County Circuit Court*, 334 Ark. 111, 971 S.W.2d 234 (1998); *Nucor Holding Co. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996). The writ is appropriate only when there is no other remedy, such as an appeal, available. *Henderson Specialties, Inc. v. Boone County Circuit Court, supra; West Memphis Sch. Dist. No. 4 v. Circuit Court*, 316 Ark. 290, 871 S.W.2d 368 (1994) (quoting *National Sec. Fire & Cas. Co. v. Poskey*, 309 Ark. 206, 828 S.W.2d 836 (1992)). When deciding whether prohibition will lie, we confine our review to the pleadings in the case. *The Wise Company, Inc. v. Clay Circuit*, 315 Ark. 333, 869 S.W.2d 6 (1993);

*State v. Circuit Court of Lincoln County*, 336 Ark. 122, 125, 984 S.W.2d 412, 414 (1999). We have further held that we do not issue a writ of prohibition for something that has already been done. *Holmes v. Lessenberry*, 297 Ark. 23, 759 S.W.2d 37 (1988) (per curiam).

The writ of certiorari, unlike prohibition, can address actions already taken by the lower court. As we noted in *Arkansas Public Defender Comm. v. Burnett*, 340 Ark. 233, 12 S.W.3d 191 (2000), when circumstances warrant, the court will treat a petition for writ of prohibition as though it were correctly filed as a petition for writ of certiorari. There we stated:

> We hold that although the Commission has sought a writ of prohibition, a writ of certiorari is the more appropriate remedy. A writ of prohibition cannot be invoked to correct an order already entered, and where, as here, the lower court's order has been entered without or in excess of jurisdiction, we carve through the technicalities and treat the application as one for certiorari. *Bates v. McNeil*, 318 Ark. 764, 888 S.W.2d 642 (1994). A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998). These principles apply when a petitioner claims that the lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *Id.*

*Burnett*, 340 Ark. at 236.

The court will grant a writ of certiorari only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Cooper Communities, Inc. v. Benton County Circuit Court*, 336 Ark. 136, 984 S.W.2d 429 (1999). It is not to be used to look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of facts, or to reverse a trial court's discretionary authority. *Juvenile H. v. Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992).

### Applicability of the writ

May argues in this appeal that the circuit court had no subject-matter jurisdiction to enter the orders respecting discovery or any

other procedures then before the arbitrator. May notes that arbitration proceedings in Arkansas are governed by the Arkansas Uniform Arbitration Act, and argues that under the Act, the circuit court only acts as an appellate court. Furthermore, May argues that because there are no cases under this act in Arkansas discussing this jurisdictional question, review of the Federal Arbitration Act is warranted. May argues that under that Act, the federal courts have found that a trial court does not retain jurisdiction over the subject of the arbitration once that court determines that the matter is properly before the arbitrator.

Riverdale responds by arguing that the circuit court retained subject-matter jurisdiction to enter the March 2, 2000, orders. First, Riverdale notes that neither the parties' contract nor the Arkansas Uniform Arbitration Act cover all possible contract disputes. Specifically, the circuit court retains jurisdiction of tort disputes and certain "aesthetic effect" contract claims. Therefore, since the tort claims remained in the circuit court, it continued to possess jurisdiction to enter the orders compelling discovery. Furthermore, the Act provides for just such motions to the circuit court in Ark. Code Ann. § 16-108-217, and the circuit court's subject-matter jurisdiction is constitutional and cannot be limited by a statute.

■ The Arkansas Uniform Arbitration Act, found at Ark. Code Ann. § 16-108-201 *et seq.*, outlines the proper procedures to arbitrate contract disputes. The scope of arbitration is defined by the contract between the parties, *see Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996), and the Act contemplates the courts effectuating this agreement.

The Act describes the proper procedure to pursue arbitration. Under Ark. Code Ann. § 16-108-202, a party to a contract containing an arbitration clause may make an initial "application" to the court for the court to order arbitration. Ark. Code Ann. § 16-108-202, § 16-108-217, and § 16-108-218 note that the proper "court" is a circuit or chancery court subject to the appropriate venue requirements. Upon application to the proper court, the party seeking to enforce the arbitration clause in the contract must produce the contract language allowing the arbitration, and the other party may make an "application" to oppose the arbitration if there is a "substantial and bona fide dispute" as to the validity or

existence of an agreement to arbitrate. Ark. Code Ann. § 16-108-202(b). The court may determine whether the contract requires arbitration, and then may either order arbitration or refuse it. Ark. Code Ann. § 16-108-202(b). Furthermore, if a matter is pending in court, and an issue arises that should be referred to arbitration, Ark. Code Ann. § 16-108-202(d) further provides that

> [a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration *or an application therefor* has been made under this section, or, if the issue is severable, the stay may be with respect thereto only. *When the application* is made in the action or proceeding, the order for arbitration shall include the stay. (Emphasis added.)

Once arbitration has begun, the Act confers certain powers on the arbitrators. In Ark. Code Ann. § 16-108-205(1), the Act provides that the court-appointed arbitrators

> may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. *The court on application* may direct the arbitrators to proceed promptly with the hearing and determination of the controversy; (Emphasis added.)

In addition, Ark. Code Ann. § 16-108-207(a) allows the arbitrators to

> issue or cause to be issued subpoenas for the attendance of witnesses and for the production of books, records, documents, and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served, *and upon application to the court* by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in a civil action. (Emphasis added.)

Furthermore, "*on application* of a party and for use as evidence, the arbitrators may permit a deposition to be taken, in the manner and upon the terms designated by the arbitrators, of a witness who cannot be subpoenaed or is unable to attend the hearing." (Emphasis added.) Ark. Code Ann. § 16-108-207(b).

Interestingly, and most importantly to the issue presented in this case, Ark. Code Ann. § 16-108-216, entitled "Applications to court," describes when applications can be made to the court in arbitration matters. This section states:

> Except as otherwise provided, *an application to the court* under this subchapter shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions. Unless the parties have agreed otherwise, notice of an initial application for an order shall be served in the manner provided by law for the service of a summons in an action. (Emphasis added.)

Clearly, by the language in this statute, the legislature anticipated that the parties would make both the "initial application" to refer the matter to arbitration and other "applications" for additional matters to be heard by the overseeing circuit or chancery court. As noted in the emphasized language in the statutes cited above, "applications" may be made by a party to stay the arbitration proceedings (Ark. Code Ann. § 16-108-202(d)), by a party or the arbitrators to promptly proceed with the arbitration (Ark. Code Ann. § 16-108-205(1)), and enforcing subpoenas issued by the arbitrators. (Ark. Code Ann. § 16-108-207(a)). Based on this language, it appears that the legislature anticipated that the circuit or chancery court that ordered arbitration could continue to have jurisdiction and some control in the proceedings in certain circumstances.

Here, May argues, in part, that Ark. Code Ann. § 16-108-217 specifically limits the court's jurisdiction "to enforce the agreement under this subchapter and to enter judgment on an award thereunder." We decline the invitation to adopt such a reading of the statute on this record.

▮ The Act has been the subject of little review in our state appellate courts. The existing case law addresses an appellate court's role in certifying a matter for arbitration or in reviewing a final arbitration decision, but does not address these sorts of "motion" or "application" disputes. Generally, as a matter of public policy, arbitration is strongly favored, and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Anthony,* 324 Ark. at 57; *Lancaster v. West,* 319 Ark. 293, 891 S.W.2d 357 (1995); *Estate of Sandefur v. Greenway,* 898 S.W.2d 667 (Mo. App. W.D. 1995). Once an arbitration is finalized with a decision by the arbitrators and appealed to the circuit or chancery court, the judiciary's review is limited to vacating an arbitration award only on statutory grounds, unless the award is violative of a

strong public policy. *Anthony*, 324 Ark. at 58; *Stifel, Nicolaus & Co.*, 872 S.W.2d 484 (Mo. App. W.D. 1994); *Lieberman v. Lieberman*, 566 N.Y.S.2d 490 (Sup. 1991). If there is no case law and no compelling policy on an issue, provisions of the Uniform Arbitration Act should be construed consistent with the decisional law of other states which have adopted the Act. *Heineman v. Charno*, 877 S.W.2d 224 (Mo. App. W.D. 1994).

■ Because this court has not addressed this issue, it is proper to look to similar proceedings in other courts for guidance. The federal courts, pursuant to the United States Code, do allow a federal district court to retain authority to enforce orders by the arbitrator. *See* 9 U.S.C.A. § 7.[1] While the federal system continues to debate whether simultaneous discovery may occur in both an arbitration proceeding and in district court, the federal statutes and case law offer persuasive authority for the proposition that the courts retain jurisdiction to enforce orders already issued by the arbitrator, which is the situation in the case now before this court. With the language in our Act conferring continuing jurisdiction on the overseeing court through the application process, and the support in the federal case law allowing a court to enforce an arbitrator's order, it is not apparent here that there was a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or that the proceedings are erroneous on the face of the record. *Cooper Communities, supra.*

■ We hold, therefore, that the petitioner has fallen short of showing that there has been a plain, manifest, clear, and gross abuse

---

[1] The provisions in 9 U.S.C.A. § 7 are strikingly similar to those in the Arkansas Act, and several federal courts have determined that the district courts have the power to enforce orders already issued by the arbitrator. *See, e.g., Western Emp. Ins. Co. v. Merit Ins. Co.*, 492 F.Supp. 53 (N.D. Ill. 1979). However, there is a continuing debate in the federal courts regarding whether the Federal Rules of Civil Procedure must be used in discovery and to allow simultaneous discovery in arbitration proceedings and in the district courts, as the underlying reason for arbitration is to allow an informal and fast resolution of the parties' disputes without the formality of the court system. *See Int'l Assoc. of Heat and Frost Insulators and Asbestos Workers v. Leona Lee Corp.*, 434 F.2d 192 (5th Cir. 1970) (per curiam) (Court upheld district court's retention of jurisdiction in arbitration proceeding and allowed discovery pursuant to federal discovery procedures); *but see, Recognition Equipment, Inc. v. NCR Corporation*, 532 F.Supp. 271 (N.D. Texas, Dallas Div. 1981) (District court, relying on *Mississippi Power Company v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D.Miss.1976), rejected use of *Leona Lee* finding that use of the Federal Rules of Civil Procedure in arbitration proceedings frustrates the underlying purpose of arbitration, but notes that "exceptional circumstances" would allow discovery under the federal rules).

of discretion without any other remedy such as appeal. On the record before us, we cannot say that the circuit court exceeded its jurisdiction by issuing orders to enforce the arbitrator's discovery orders. Petition for Writ of Certiorari denied without prejudice.

BROWN, J., not participating.

GLAZE, J., concurs.

GLAZE, J., concurring. I concur based solely upon the petitioner's failure to show that the trial court exceeded its jurisdiction.