# AGAPE CHURCH, INC. *v.* PULASKI COUNTY, Arkansas

91-160                                    821 S.W.2d 21

### Supreme Court of Arkansas
### Opinion delivered December 16, 1991

*Giroir & Gregory*, by: *H. Watt Gregory III, Michael G. Smith*, and *Janne G. Siegel*, for appellant.

*Larry D. Vaught*, for appellee.

ROBERT L. BROWN, Justice. This appeal arises from an order of the Pulaski County Circuit Court denying the appellant, Agape Church, Inc., an exemption from real estate taxes. The property involved is twenty-six acres of land, which is located some distance from the church buildings. A 700-foot transmission tower and a tower house for broadcasting Christian programming are the only structures that have been erected on the acreage. The church appeals the denial of the exemption on the basis that the tower and the acreage were dedicated church property and, therefore, qualified for an exemption under the statute.

The facts are not at issue. Agape Church, Inc., a non-profit corporation, operates a non-denominational Christian church in Little Rock. As part of its ministry, the church has a television station and broadcasts on cable Channel 25, KVTN. It asserts that all television property, including the tower, tower house, and acreage, are exclusively used for and dedicated to Christian purposes.

The appellee, Pulaski County, sought to assess the acreage with its improvements for real estate taxes, and the church claimed an exemption under Ark. Code Ann. § 26-3-301(11)(A) (Supp. 1991), which reads:

> Under the provisions of this section, all dedicated church property, including the church building used as a place of worship, buildings used for administrative or missional purposes, the land upon which the church buildings are located, all church parsonages, any church educational building operated in connection with the church including a family life or activity center, a recreation center, a youth center, a church association building, a day-care center, a kindergarten, or private church school shall be exempt.

The Pulaski County Judge denied the exemption, and the church appealed the denial to the Pulaski County Circuit Court, which conducted a trial de novo and ultimately affirmed the ruling of the county judge. In doing so, the circuit court held that the property was not exempt under either Ark. Const. art. 16, § 5 or Ark. Code Ann. § 26-3-301(11)(A).

We begin with an analysis of the property claimed by the appellant to be exempt. The twenty-six acres and the tower are located in eastern Pulaski County near the Lonoke County line. On the land is also an adjoining tower house, which is a ten by twenty foot building that houses the transmitter. The tower's height is 700 feet, and it is anchored to the ground by guy wires that extend 500 feet from the tower's center. Virtually all of the twenty-six acres is used to accommodate the tower. The tower transmits the broadcast signal from the church to Channel 25. No church services are held on the acreage, and the broadcasts do not originate from that property. This acreage is separate and apart from the church proper which is situated in west Little Rock.

The purposes of the church and the station were described by the Reverend Howard Lee Caldwell, the church's pastor, at the hearing before the circuit court. He testified that in 1988 the church purchased a certificate of construction for a full power UHF television station, Channel 25. The station went on the air in December 1988, and on Christmas Day, in a live broadcast, he dedicated the television station "to the work of the Lord for Christian programming in Central Arkansas." Since then, he said, the programming has been solely Christian. Some programs are broadcast from the church, but the vast majority of programming comes from other Christian denominations and from Christian sources such as the 700 Club that pay the church to run their broadcasts. Contributions received from Arkansas viewers by the other Christian programmers are shared with the church. The church estimates that it reaches eight times the number of the people through television on Sunday morning than it does through regular Sunday morning services — over 1,200 people attend services, while the television station reaches over 8,000 homes.

The church congregation raised the money to build the station in 1988, including money for the acreage and the tower which are the subject of this appeal. The bulk of support for the station's maintenance and operation comes from the congregation, although non-members also contribute. All viewers are asked to make a gift of $10 a month for the station. There is, too, the revenue derived from the sale of air time to other Christian programmers and a small amount of monthly advertising revenue. Any monthly deficit is made up by the church from the

church's general fund. The church has realized no profit from the station's operation.

■ We have long held that exemptions from taxation must be strictly construed, regardless of merit, in favor of taxation and against exemption. *See, e.g., City of Fayetteville* v. *Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991); *Arkansas Conference Association of Seventh Day Adventists, Inc.* v. *Benton County Board of Equalization*, 304 Ark. 95, 800 S.W.2d 426 (1990); *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960); *Brodie* v. *Fitzgerald*, 57 Ark. 445, 22 S.W.2d 29 (1893). We have further held that the scope of review for tax exemption cases is *de novo* on appeal. See *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 119 (1987). Lastly, we have held that the party claiming an exemption must prove it beyond a reasonable doubt. *Id.*; *see also Ragland* v. *Pittman Garden Center, Inc.*, 299 Ark. 293, 772 S.W.2d 331 (1989); *C&C Machinery, Inc.* v. *Ragland*, 278 Ark. 629, 648 S.W.2d 61 (1983); *S.H. & J. Drilling Corp.* v. *Qualls*, 268 Ark. 71, 593 S.W.2d 178 (1980); *Heath* v. *Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 953 (1976).

■ Bearing these principles in mind and reviewing the case de novo, we cannot say that § 26-3-301(11)(A) clearly embraces television towers or like structures with the degree of exactness and certainty required by our cases or that an exemption has been proven beyond a reasonable doubt. By its terms, the exempting statute refers to "all dedicated church property" and then lists "buildings" and "centers" such as the church itself, administrative buildings, the parsonage, and the youth center. This language is ambiguous. Were we to stop with the words "all dedicated church property," the task would be immensely easier. But we are required to read the statute in its entirety, and it can be read several different ways.

One interpretation is that the buildings and centers listed in the statute are all the General Assembly intended to exempt. A second interpretation is that the General Assembly intended to exempt other buildings as well, and this statutory list merely comprises examples. A third interpretation is the one advanced by the church — the statute embraces all dedicated church property, whether buildings or real estate or structure like the

tower.

It is possible that the General Assembly did intend a very liberal exemption under the statute, but the argument that the legislature intended to limit the exemption to the buildings listed in the statute or to church buildings general is equally persuasive. A television tower, manifestly, is not a building, and the fact that a small incidental tower house is located on the property does not convert the entire twenty-six acres into a "building."

We turn to the doctrine of *ejusdem generis* for guidance in resolving this ambiguity. In 1989 we defined that doctrine in the following terms:

> The doctrine provides that, 'Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the proceeding specific words.' 2A Singer, *Sutherland Statutory Construction* § 47.17 (4th ed. 1984). See also, *Jones v. State*, 104 Ark. 261, 149 S.W. 56 (1912); *Cherokee Public Service* v. *City of West Helena*, 184 Ark. 38, 41 S.W.2d 773 (1981). The doctrine can only apply however, when certain conditions exist:
>
> > (1) The statute contains an enumeration of specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*Sutherland Statutory Construction, supra*, § 47.18. *Woodruff* v. *Shockey*, 297 Ark. 595, 598, 764 S.W.2d 431, 432, (1989); *see also Hutcheson* v. *Pace*, 252 Ark. 928, 481 S.W.2d 710 (1972); *Union Bankers Ins. Co.* v. *Nat'l Bank of Commerce of Pine Bluff*, 241 Ark. 554, 408 S.W.2d 898 (1966); *Fagan Electric Co., Inc.* v. *The Housing Authority*, 216 Ark. 932, 228 S.W.2d 39 (1950). Though the doctrine is generally cited in connection with a general reference in the statute which follows a specific enumeration, it is equally applicable where the general reference precedes a list of specific examples.

We hold that the conditions of *ejusdem generis* exist in this case and that application of the doctrine is appropriate. Under this doctrine "all dedicated church property" is a class of property which is defined under the statute by what comes subsequently. Those specific references are to church buildings, administrative buildings, land for church buildings, parsonages, and various centers for church-related activities. A reasonable interpretation of the class of exempt property is one that embraces buildings related to church purposes and land where they are located. The class defined by the specific references, therefore, is composed of church buildings, church-related buildings, and the land on which such buildings are located. As we cannot conclude that a television tower is a building, it does not come within the class.

The church directs our attention to several cases in foreign jurisdictions and relies especially on an Ohio case as precedent. *See Maumee Valley Broadcasting Ass'n* v. *Porterfield*, 29 Ohio St. 2d 95, 279 N.E.2d 863 (1972). The *Maumee Valley* case differs factually from the case before us. There, the issue was the payment of sales and use taxes by the church for purchases made in connection with a ten-acre tract on which was located a broadcasting studio and an auditorium to accommodate about 120 people. The Ohio Board of Tax Appeals had allowed the exemption, and the Ohio court deferred to the Board on the factual issues. It then looked to the character, motive, and purpose of the facilities on the ten acres and concluded that the tract had the necessary attributes for a church. What distinguishes *Maumee Valley* from this case, however, is that religious activities occurred on the premises — in the broadcasting studio and in the auditorium. That is not the situation in the case before us.

Though the church admits that it hinges its argument on the exemption statute and not the exemption for "churches used as such" set out in Ark. Const. art. 16, § 5, it still looks to cases construing the constitutional language and argues that this authority is instructive on how the exemption statute should be construed. In this regard, the church relies particularly on *Hilger* v. *Harding College, Inc.*, 231 Ark. 686, 331 S.W.2d 851 (1960).

In *Hilger*, the issue was whether a college-owned laundry, printing shop, and dairy were used directly and exclusively for

school purposes so as to be exempt from taxation under Ark. Const. art. 16, § 5. We reversed the chancellor and denied the exemption. In doing so we interpreted the exemption language in the constitution — "school buildings and apparatus; libraries and grounds used exclusively for school purposes." We distinguished between the purpose for which property was actually being used and the purpose for which the income derived from the property was being used and concluded that the laundry and other property were not exclusively used for school purposes and, therefore, were not exempt.

*Hilger*, however, is not helpful in deciding this case. The exemption claimed in *Hilger* under the constitution is different from the exemption that confronts us. Also, here, the fact that the purpose of the tower is to communicate Christian teachings is undisputed. The issue, rather, is whether the tower, which admittedly is used for Christian purposes, falls within the parameters of the exemption statute.

It is true that in past cases we interpreted the constitutional language, "churches used as such," in light of whether the land involved was used exclusively for church purposes. *See Burbridge v. Smyrna Baptist Church*, 212 Ark. 924, 209 S.W.2d 685 (1948); *Pulaski County v. First Baptist Church*, 86 Ark. 205 (1908). In *First Baptist Church*, we denied the real estate tax exemption on the basis that the well and water closets located on a separate lot could have been situated on the lots where the church was built. In *Burbridge*, we reversed the chancellor and denied a tax exemption on twenty acres of land where the church had burned and the cemetery occupied only two acres of the tract.[1]

The fact that we alluded to church purposes in those cases is not precedent for the church's proposition that the character or motive or purpose of the tower should govern this case, rather than the specific language of § 26-3-301(11)(A). Furthermore, in both *Burbridge* and *First Baptist Church*, we tied our decision to the fact that the land sought to be exempt was not identified closely enough with a functioning church building. In *Burbridge*, the church had been destroyed and the congregation dispersed. In

---

[1] Cemetaries are entitled to a separate exemption under Ark. Const. art. 16, § 5.

*First Baptist Church*, there was no reason to have the well and water closets on a separate lot when they could have been placed on the same lots as the church building.

Our cases mandate that we strictly construe statutory exemptions in favor of taxation, no matter how commendable or beneficial the exemption claim may be. Moreover, our interpretation of the statute limits the class of exempt dedicated church property to buildings related to church purposes and land where they are located. We, therefore, decline to liberalize our exemption statute in accordance with one interpretation so as to effectuate a particular exemption when the statute is not clear. Clarification of this exemption statute rests with the General Assembly — not the courts. We will resist the temptation to legislate an expansive interpretation.

Affirmed.

CORBIN, J., concurs.