Jennifer THOMPSON, a Minor, by Dwight Thompson and
Debbie Thompson, Her Natural Guardians and Next
Friends *v.* The Honorable Harold S. ERWIN, Circuit Judge
of Randolph County, Arkansas

92-513                                          838 S.W.2d 353

Supreme Court of Arkansas
Opinion delivered October 5, 1992

*James M. Luffman*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Jack Gillean*, Deputy Att'y
Gen., and *Pamela Rumpz*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Petitioners seek a writ of mandamus

ordering the respondent, the Honorable Harold S. Erwin, Circuit Judge of Randolph County, to proceed forthwith to the trial of a case involving their daughter as prosecutrix. Petitioners are the parents and next friends of Jennifer Thompson, who has charged five males with rape arising from an incident occurring on August 4, 1990, when Jennifer was thirteen. An information was filed against the five defendants on August 27, 1990.

The case was first set for trial on September 24, 1990, and reset to February 25. Thereafter four continuances have been granted on motions of the defendants and unopposed by the prosecuting attorney. Trial is presently set for October 22, 1992.

Petitioners acknowledge they have not sought relief in the trial court in the belief they have no standing. They concede, as well, there is no precedent for the issuance of a writ of mandamus at the behest of a victim of a crime. They refer us to several cases wherein mandamus was ordered: *Peters* v. *Superior Court*, 212 Cal.App.3d 218, 260 Cal. Rptr. 426 (1989); *Koch-Ash* v. *Superior Court*, 180 Cal.App.3d 689, 225 Cal. Rptr. 657 (1986); *Schneider* v. *Flowers*, 137 Misc.2d 512, 521 N.Y.S.2d 647 (1987), and *Edmondson* v. *Bourland*, 179 Ark. 975, 18 S.W.2d 1020 (1929). But those are civil cases involving parties directly affected by the proceedings. They have no precedential value in the case before us.

In the recent case of *Eason* v. *Erwin*, 300 Ark. 384, 781 S.W.2d 21 (1989), we wrote:

A mandamus is not a writ of right but is within the discretion of the trial court, and the party applying for it must show a specific legal right and the absence of any other adequate remedy. *State* v. *Board of Directors of School Dist. of Ashdown*, 122 Ark. 337, 183 S.W.2d 747 (1916). It will not lie to control or review matters of judicial discretion, but only to compel the exercise of such discretion. *Rolfe* v. *Spybuck Drainage Dist. No. 1*, 101 Ark. 29, 140 S.W.2d 988 (1911).

We further noted in Eason that it is crucial to the American judicial system that trial courts retain the discretion to control their dockets, suggesting that the imperative of Canon 3(A)(5) of the Code of Judicial Conduct to promptly dispose of cases

provides recourse in instances of neglect. *Id*. at 387.

Petitioners rely on Ark. Code Ann. § 16-10-130 (1987). The provision reads:

> Notwithstanding any rule of court to the contrary and in furtherance of the purposes of Arkansas Rule of Criminal Procedure 27.1, all courts of this state having jurisdiction of criminal offenses, except for extraordinary circumstances, shall give precedence to the trials of criminal offenses over other matters before the court, civil or criminal, when the alleged victim is a person under the age of fourteen (14).

The identical provision appears at Ark. Stat. Ann. § 16-80-102 (1987) of the code.

■ However, we can find no inkling in the working of that statute that the legislature intended to create on behalf of youthful victims standing to pursue active involvement in pending criminal cases. Unquestionably, the act mandates the urgent scheduling of those cases for trial in preference to *all other cases*, absent extraordinary circumstances. But it does not follow that so drastic a step as to endow victims of crime with enforcement powers is to be inferred from the mere expedience of establishing a preference in the trial of cases. The creation of a preference by statute or rule of court is a familiar innovation in case management, and the wording of the statute does not suggest that anything other than a priority is intended.

Nor does the emergency clause alter our reading of the statute:

> Section 3 of Acts 1985, No. 569, read: "It is hereby found and determined by the General Assembly that there has been a tremendous increase in the number of offenses perpetrated against children in this State, that children of very tender years have increasing difficulty remembering past events necessary for a criminal prosecution the longer the length of time between the event and the trial, and that offenses against children are especially serious as to require, as nearly as possible, immediate removal of the offender from society. Therefore, this Act is necessary to shorten the time between the occurrence of the criminal

offense and the trial and punishment of the perpetrator. Therefore, an emergency is hereby declared to exist and this Act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval." Approved March 26, 1985.

Again, while it is crystal clear the act is aimed at the prompt disposition of criminal cases involving victims of tender years, nothing in the wording of the emergency clause suggests such victims are invested under the act with power to implement. That authority, that *responsibility,* resides in the trial court.

We are hampered in this case in drawing the sort of conclusive inferences from the lapse of time inherent to mandamus because the record presented tells us only that motions for continuances have been granted. The reason or urgency of those deferments is wholly unexplained. Thus, there is no clear showing that the continuances are unwarranted or that the trial court has failed in its responsibility.

While we do not in any sense denigrate the interest of a victim in the timely prosecution of an offender, the rights of an accused to a fair trial, including time to prepare, are founded on the highest sanction under law, the Constitution. Thus, a victim's understandable desire for a swift result does not transcend a defendant's rights under the Constitution, and time alone is not the measurement of either.

We note, coincidentally, that one of the five defendants, Joseph Wicker, who was sixteen years of age at the time of the alleged offense, moved to transfer to juvenile court. That motion was denied by order entered on November 25, 1991, followed by an appeal to this court. *See Joseph Wicker* v. *State of Arkansas,* Supreme Court No. 92-245, submitted September 28, 1992. It may be the trial of the remaining defendants was deferred awaiting the outcome of Wicker's appeal. However, whether that development constitutes an "extraordinary circumstance" cognizable under the statute, we do not decide on this record. We merely mention that aspect of the case.

The fact that we decline to issue mandamus should not be construed as sanctioning what appears to be a signal disregard

for § 16-10-130. If the Wicker appeal occasioned the delay, that will soon be removed as an obstacle and we venture to assume the trial court and prosecutor will give due regard to the statutory preference in the scheduling of trial. To promote a more circumspect compliance with the statute, we are today issuing Administrative Order No. V.

Writ denied.

HOLT, C.J., concurs.

JACK HOLT, JR., Chief Justice, concurring. The rape trial of Jennifer Thompson's alleged assailants has been continued five times from September 24, 1990, to the sixth and current trial date set, on October 19, 1992. Examination of the record reflects that the orders of continuance were either preprinted forms or court orders which merely changed the date of trial, stated that the delay will be excluded from the speedy trial period because the continuance was granted at the request of the defendant or his counsel, and gave no reason for the request for continuance. In fact, the record is barren as to reasons for the continuance on any of the five sets of orders granting continuances. Arkansas R. Crim. P. 27.3 provides that courts shall grant a continuance "only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." There is no showing of good causes as required by our rule, nor is there any indication that the continuances were granted for as long as necessary.

Given the importance placed by our Legislature on prioritizing trials where the victim is a child, these unexplained delays make our judicial system suspect and give credence to the well worn phrase, "justice delayed is justice denied." Perhaps compliance with Ark. R. Crim. P. 27.3 and our new Administrative Order No. V will provide a cure to avoid ills seen in the record of this case.