Charlie McKINNEY, Father of and Next Best Friend of
Michael McKinney and Melissa McKinney
*v.* Jimmy ROBBINS

94-846                                    892 S.W.2d 502

Supreme Court of Arkansas
Opinion delivered February 20, 1995

*Chet Dunlap*, for appellants.

*Snellgrove, Laser, Langley, Lovett & Culpepper*, by: *Glenn Lovett, Jr.*, for appellee.

ROBERT L. BROWN, Justice. The issue in this case concerns the interpretation of an Arkansas statute which deals with "domesticated animals" killed by dogs and the right to kill an offending dog after such an attack. *See* Ark. Code Ann. § 20-19-102(a)(1), (b)(2) (Repl. 1991). Summary judgment was entered in favor of appellee Jimmy Robbins, who killed appellant Charlie McKinney's dog and who successfully raised the statute as a defense. McKinney now contends, first, that summary judgment was inappropriate because the statute cannot be used as a defense under the facts of this case, and, secondly, that a material issue of fact remains to be decided. We agree on the first point, and we reverse the order of summary judgment and remand the matter for trial.

On October 18, 1992, McKinney and his two children, Michael and Melissa McKinney, were the owners of a full-blooded Chow dog. On that same date, the dog was intentionally killed by Robbins, using a shotgun, when the dog ventured onto Robbins's property. McKinney sued Robbins for outrageous conduct and asked for compensatory and punitive damages associated with the death of his dog. Robbins answered that the dog was vicious and had previously killed his cats and threatened his child and guests. Robbins added in his answer to an amended complaint that he was immune from a lawsuit under Arkansas law and was justified in the shooting because the dog was about to attack a member of his household.

Robbins next moved for summary judgment on the theory that he was justified in shooting the dog as a matter of law because it had killed two of his kittens a few days before he shot the dog. He cited as authority Ark. Code Ann. § 20-19-102(b)(2), which permits the owner of a domesticated animal to kill a dog which kills his domesticated animal. The trial court agreed and granted summary judgment in favor of Robbins and dismissed McKinney's complaint. In the order, the court made these findings:

1. The affidavits and answers to interrogatories on file reflect that it is undisputed that the dog killed by defendant [Robbins] had killed one or more of defendant's pet kittens several days before.

2. Defendant's pet kittens were "domesticated animals" within the meaning of Ark. Code Ann. § 20-19-102(a)(1), so that defendant's act of killing plaintiff's dog was justified under Ark. Code Ann. § 20-19-102(b)(2).

For his first point for reversal, McKinney contends that pet kittens are not "domesticated animals" under the applicable statute and that the killing of his dog was, therefore, not justified. The controlling statute reads:

(a)(1) "Domesticated animals" includes, but is not limited to, sheep, goats, cattle, swine, and poultry.

. . . .

(b)(2) Any person knowing that any dog has killed or is about to catch, injure, or kill any domesticated animal shall have the right to kill the dog, without in any way being liable to the owner of the dog in any courts of this state.

Ark. Code Ann. § 20-19-102 (Repl. 1991).

We begin by noting that the statute is ambiguous. Domesticated animals is a term which typically can include livestock or pets. Cats, for example, have been defined as domestic or domesticated animals. *See generally Law As to Cats*, 73 ALR2d 1032 (1960); *The Random House Dictionary of the English Language*, 324-25 (2d ed. 1987); *see also Van Houten* v. *Pritchard*, 315 Ark. 688, 870 S.W.2d 377 (1994). The statute at hand, however, only provides examples of domesticated animals which are livestock, not domestic pets. It also states that the definition of domesticated animals is not limited by the specific examples of livestock given. The question then is whether the term "domesticated animals" is intended to include other livestock such as horses and mules or is it intended to embrace domestic pets such as kittens, hamsters, parakeets, and the like in addition to other livestock.

Robbins draws our attention to a 1914 case from the Maine Supreme Court and urges that the case is precedent for the case at bar. *See Thurston* v. *Carter*, 92 A. 295 (Me. 1914). True, the case did involve a Maine statute and facts where plaintiff's fox hound had been killed by the defendant for taunting his cat, and the defendant was found to be free of liability. The statute in that case provided that dogs could be killed for worrying or killing "any domestic animal," and the Maine court opined that a cat was a domestic animal. But the Maine statute did not contain the list of livestock that the Arkansas statute has. As a consequence, the ambiguity that exists in our statute was not an issue in the Maine case.

In construing an ambiguous statute, we have turned in the past to the doctrine of *ejusdem generis. See Agape Church, Inc.* v. *Pulaski County*, 307 Ark. 420, 821 S.W.2d 21 (1991); *Woodruff* v. *Shockey*, 297 Ark. 595, 764 S.W.2d 431 (1989). That doctrine applies when these conditions exist:

> (1) The statute contains an enumeration of specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*Id.* We observed in *Agape Church, Inc.* that the doctrine was applicable whether the general reference in the statute is placed before or after the specific enumeration.

In the case at hand, the list of sheep, goats, cattle, swine, and poultry more than suggests a class of livestock, and the class is not exhausted by the enumeration. There is, too, a general reference to the inclusion of other non-listed domesticated animals which serves to supplement the enumeration. Nor do we ascertain a legislative intent to expand and extend the definition to domestic pets, a category into which cats and kittens clearly fall. On the contrary, the legislative history of § 20-19-102 which dates back to 1887 details enactments expanding on the list of specific animals but always including livestock. *See* Act 136 of 1887 (sheep); Act 155 of 1917 (adds goats); Act 393 of 1987

(adds cattle, swine, and poultry). The pattern of legislative acts appears to limit reprisals only to dogs which kill livestock.

There is a second rule of construction that assists in this case, and that is *noscitur a sociis*. Literally, the doctrine means "it is known from its associates," and as practically applied, it means that a term may be defined by an accompanying word. *Weldon* v. *Southwestern Bell Telephone Co.*, 271 Ark. 145, 607 S.W.2d 395 (1980). In *Weldon*, the issue was whether a statute which listed "maintenance of telephone lines, poles, and fixtures" applied to every kind of fixture such as water meters or only to telephone fixtures. We reversed the trial court and held that the context of the statute limited the term "fixtures" to telephone fixtures.

We also invoked the *noscitur a sociis* doctrine in a case where we interpreted the phrase "other public purposes" as used in a constitutional amendment for financing industrial development. *McDonald* v. *Bowen*, 250 Ark. 1049, 468 S.W.2d 765 (1971). In limiting the scope of the phrase, we said:

> We are unwilling to lift words, "other public purposes," from their context and take them to mean absolutely any conceivable public purpose, regardless of its connection with the rest of the Amendment.
>
> . . . .
>
> In holding that the phrase, "other public purposes," was not an open-end authorization of unlimited scope, we are influenced by two principles of interpretation. First, the rule of construction known as *noscitur a sociis* (It is known from its associates) requires that general language be construed to be comparable to the specific language of its context. *Altus Cooperative Winery* v. *Morley*, 218 Ark. 492, 237 S.W.2d 481 (1951). Here every other clause in the Amendment has to do with the attraction of new industry. In that context the reference to other public purposes may fairly be taken to mean those of the same nature as the enumerated ones, even though not specifically set forth.

250 Ark. at 1055, 468 S.W.2d at 769. In short, under the two principles of construction, we have looked either to the enumerated list or to the context of the law in interpreting the gen-

eral language. We apply those principles in interpreting subsections 20-19-102(a)(1) and (b)(2), and hold that the term "domesticated animals" is limited to livestock and does not cover domestic pets. Thus, the statute does not provide a defense to Robbins, and the order of summary judgment must be reversed.

There is a practical aspect to our holding today. The genesis of the 1887 Act was manifestly a need to protect livestock in the form of sheep against marauding dogs. Sheep represented livelihood and a means of sustenance. The same is true of the other kinds of livestock added to the statute over more than a hundred years. To extend the definition of "domesticated animals" which is limited by its terms to examples of livestock to include pets would expand the effect of the Act far beyond what, we believe, was intended by the General Assembly.

Accordingly, we reverse the order of the trial court and remand this cause for trial. Because we reverse on the first point, there is no need to address the second point raised.

Reversed and remanded.