Ray HANLEY, in His Official Capacity as Director of the Arkansas Department of Health and Human Services
v. ARKANSAS STATE CLAIMS COMMISSION; Norman L. Hodges, Jr., In His Official Capacity as Director of the Arkansas State Claims Commission; and Diane Pieroni, Robert Handley, Joe Peacock, and Ralph Patton, in Their Official Capacities as Arkansas State Claims Commissioners

97-775 970 S.W.2d 198

Supreme Court of Arkansas
Opinion delivered May 7, 1998

*Breck G. Hopkins*, for appellant.

*Brian G. Brooks*, for appellees.

*Mitchell, Williams, Selig, Gates & Woodyard PLLC*, by: *Sherry P. Bartley* and *Dowd, Harrelson, Moore & Giles*, by: *C. Wayne Dowd*, for interventor-appellee.

ANNABELLE CLINTON IMBER, Justice. In this case, we are asked to determine whether the circuit court erred when it refused to issue either a writ of mandamus or a writ of certiorari ordering the Arkansas Claims Commission to dismiss a claim pending before it. We affirm the trial court's denial of both writs.

The Arkansas Department of Human Services Division of Medical Services (DHS) is responsible for administering Medicaid in Arkansas. From July 1, 1991, until June 30, 1994, DHS established Medicaid reimbursement rates that were lower for out-of-state hospitals than for in-state hospitals. Texarkana Memorial Hospital, d/b/a Wadley Regional Medical Center, ("Wadley"), is an out-of-state hospital that was affected by this plan.

On April 8, 1996, Wadley filed a complaint before the Arkansas Claims Commission against Ray Hanley in his official capacity as Director of DHS. In its complaint, Wadley alleged that the 1991-1994 Medicaid reimbursement rates were invalid for several reasons,[1] and thus it was entitled to $2,835,828, which is the amount the hospital would have received if it had been an in-state Medicaid provider. On April 26, 1996, DHS filed a motion to dismiss Wadley's claim because the Commission did not have jurisdiction to hear it. The Commission denied DHS's motion on September 11, 1996.

In response, DHS filed in the Pulaski County Circuit Court a petition for a writ of certiorari or a writ of mandamus ordering the Claims Commission to dismiss Wadley's Medicaid claim. The trial court denied DHS's petitions on April 11, 1997. In its order, the court found that it did not have jurisdiction to issue either a writ of mandamus or a writ of certiorari to the Claims Commission because it is an arm of the General Assembly. The court also found that even if it had jurisdiction, the writs were inappropriate because DHS had an adequate remedy of appealing the Commission's decision to the General Assembly.

On appeal, DHS raises several arguments as to whether the Claims Commission has jurisdiction to hear Wadley's Medicaid claim. The trial court did not rule on this issue, and thus we are precluded from considering it on appeal. *See McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997). Instead, the trial court only ruled as to whether it had jurisdiction to issue either a writ of mandamus or a writ of certiorari to the Claims Commission. Accordingly, we will limit our review to these two issues.

## I. Writ of Mandamus

The first issue is whether the trial court erred when it denied DHS's petition for a writ of mandamus. We will reverse a

---

[1] Wadley alleged numerous causes of action including breach of contract, violation of the federal Medicaid Act, violations of two state statutes, and several constitutional challenges.

trial court's ruling on a petition for a writ of mandamus only if there has been an abuse of discretion. *Hicks v. Gravett,* 312 Ark. 407, 849 S.W.2d 946 (1993); *State v. Grimmett,* 292 Ark. 523, 731 S.W.2d 207 (1987).

A writ of mandamus, as defined by Ark. Code Ann. § 16-115-101 (1987), is appropriate if the following two factors are established. First, the judiciary may issue a writ of mandamus to an executive or legislative officer only if the duty to be compelled is ministerial and not discretionary. *Saunders v. Neuse,* 320 Ark. 547, 898 S.W.2d 43 (1995); *State v. Grimmett, supra.* For example, in *Wells v. Purcell,* 267 Ark. 456, 592 S.W.2d 100 (1979), we held that a writ of mandamus could not be used to compel the legislature to adjourn the Seventy-Second General Assembly because the decision to continue the session was a discretionary matter. We have also held that although the writ cannot be used to control or review matters of discretion, it may be used to force an official to exercise that discretion. *Saunders v. Neuse, supra; Thompson v. Erwin,* 310 Ark. 533, 838 S.W.2d 353 (1989).

Second, the petitioner must show a clear and certain right to the relief sought, and the absence of any other adequate remedy. *Redd v. Sossamon,* 315 Ark. 512, 868 S.W.2d 466 (1994); *Thompson v. Erwin, supra.* In *State v. Grimmett, supra,* we distinguished that the alternative remedy must be adequate, and not merely plausible. We further explained that to be "adequate" the alternative remedy must be "plain and complete and as practical and efficient to the ends of justice and its proper administration as the remedy invoked." *Id.* Thus, in several cases we have refused to issue a writ of mandamus where the petitioner had the adequate remedy of raising the issue on appeal. *See, e.g., Gran v. Hale,* 294 Ark. 563, 745 S.W.2d 129 (1988); *Sexton v. Supreme Ct. Comm. on Prof'l Conduct,* 297 Ark. 154-A, 761 S.W.2d 602 (1988).

We agree with the trial court that DHS has failed to establish both of these factors. In *Fireman's Insurance Co. v. Arkansas State Claims Commission,* 301 Ark. 451, 784 S.W.2d 771 (1990), we held that the Claims Commission was an "arm of the General Assembly," and that a party may only appeal the Commission's rulings to the General Assembly. In 1997, the General

Assembly codified the later determination by passing Act 33 of 1997 which declares that a "decision of the Arkansas State Claims Commission may be appealed *only* to the Arkansas General Assembly." Codified at Ark. Code Ann. § 19-10-211 (Supp. 1997) (emphasis added). Because DHS is asking the judiciary to compel the Claims Commission to reverse its prior discretionary determination that it had jurisdiction to hear Wadley's Medicaid claim, and DHS has the adequate remedy of appealing the Commission's ruling to the General Assembly, we hold that the trial court did not abuse its discretion when it denied DHS's petition for a writ of mandamus. Accordingly, we affirm this ruling.

## II. Writ of Certiorari

The second issue is whether the trial court erred when it denied DHS's petition for a writ of certiorari as defined by Ark. Code Ann. § 16-13-205 (Repl. 1994). We will reverse a trial court's ruling on a petition for a writ of certiorari only if the court has abused its discretion. *Ricci v. Poole*, 253 Ark. 324, 485 S.W.2d 728 (1972).

It is well settled that certiorari lies only when it is apparent on the face of the record that there has been a "plain, manifest, clear, and gross abuse of discretion," and there is no other adequate remedy. *State v. Pulaski County Circuit Ct.*, 326 Ark. 886, 934 S.W.2d 915 (1996); *Simpson v. Pulaski County Circuit Ct.*, 320 Ark. 468, 899 S.W.2d 50 (1995); *Casement v. State*, 318 Ark. 225, 884 S.W.2d 593 (1994). These principles apply when a petitioner claims that the lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *See King v. Davis*, 324 Ark. 253, 920 S.W.2d 488 (1996).

Based on our holding in *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990), we conclude that DHS has failed to satisfy both of the elements entitling it to a writ of certiorari. In *Fireman's Insurance*, the petitioner filed a claim before the Arkansas Claims Commission based on a contract dispute it had with the Arkansas Highway and Transportation Department. *Id.* After the Commission denied the claim, the petitioner asked the circuit court to issue a writ of certiorari

reversing the Commission's decision. *Id.* The circuit court refused. *Id.* On appeal, we explained that pursuant to the doctrine of sovereign immunity neither the State nor its agencies could be named as defendants in its courts. *Id.* In 1949, the General Assembly created the Arkansas Claims Commission for the sole purpose of hearing and resolving claims against the State that could not otherwise be heard by the judiciary. *Id.* In *Fireman's*, we clarified that the Commission was an "arm of the legislature," and thus all appeals of the Commission's rulings must be heard by the General Assembly, and not the courts. *Id.* To further emphasize this point, we said that:

> the General Assembly has *total control* over the determination of, and subsequent funding for, payment of the 'just debts and obligations of the state' [and] *all other avenues of redress* through legal proceedings [are] barred by sovereign immunity . . . .

*Id.* (emphasis added). Accordingly, we affirmed the trial court's denial of the petition for a writ of certiorari. *Id.*

 As in *Fireman's Insurance*, DHS has failed to satisfy both elements entitling it to a writ of certiorari. First, we cannot say that it is clear from the face of the record that the Commission does not have jurisdiction over Wadley's claim against DHS. As acknowledged by the dissent, Ark. Code Ann. § 19-10-204(b) (Supp. 1997) provides that the Commission does not have jurisdiction over:

> claims arising under the Workers' Compensation Law, § 11-9-101 et seq., the Employment Security Law, § 11-10-101 et seq., the Arkansas Teacher Retirement System Act, § 24-7-201 et seq., the Arkansas Public Employees' Retirement System Act, § 24-4-101 et seq., the State Police Retirement System Act, § 24-6-201 et seq., or *under laws providing for old age assistance grants, child welfare grants, blind pensions, or any laws of a similar nature.*

(Emphasis added.) The dissent argues that the last phrase of this section was "clearly intended to except Medicaid claims like Wadley's," and that "Medicaid reimbursement is unquestionably 'similar' to laws providing for old-age assistance grants, child-welfare grants, and blind pensions." We disagree because the dissent's

argument misconstrues the statute and the nature of Wadley's claim.

██ ██ Pursuant to the doctrine of *ejusdem generis*, when general words follow specific words in a statutory enumeration the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *McKinney v. Robbins*, 319 Ark. 596, 892 S.W.2d 502 (1995); *Agape Church, Inc. v. Pulaski County*, 307 Ark. 420, 821 S.W.2d 21 (1991). Likewise, the doctrine of *noscitur a sociis*, which literally translates to "it is known from its associates," provides that a word can be defined by the accompanying words. *Boston v. State*, 330 Ark. 99, 952 S.W.2d 671 (1997). Applying both of these principles, we acknowledge that the specifically enumerated exceptions to the Commission's jurisdiction listed in Ark. Code Ann § 19-10-204(b) all involve claims of a similar nature: claims by individuals for benefits arising under a statute. In contrast, Wadley filed a breach of contract claim arising under common law instead of a statute. Because Wadley filed a contract claim against DHS, which, as we said in *Fireman's Insurance*, is clearly within the jurisdiction of the Claims Commission, we cannot say that on the face of the record the Commission is proposing to act beyond its jurisdiction.

██ In *Fireman's Insurance*, we also held that an aggrieved party may only appeal the Commission's decision to the General Assembly. Because DHS has the adequate remedy of appealing the Commission's ruling to the General Assembly, we also conclude that the second element entitling DHS to a writ of certiorari has not been established. Accordingly, we hold that the trial court did not abuse its discretion when it denied DHS's petition for a writ of certiorari.

Affirmed.

BROWN and THORNTON, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. Though I agree with the majority opinion that the trial court was operating within its discretion in denying the petition of the Department of Human Services (DHS) for writ of mandamus, I respectfully dis-

sent from that portion of the majority opinion that affirms the denial of DHS's petition for writ of certiorari.

The General Assembly clearly intended to except Medicaid claims like Wadley's claim for $2,835,828 from Claims Commission jurisdiction. In 1949, the General Assembly created the Claims Commission, and in doing so, limited its jurisdiction consistent with the current Arkansas Code:

> (b) The commission shall have no jurisdiction of, or authority with respect to, claims arising under the Workers' Compensation Law, § 11-9-101 et seq., the Employment Security Law, § 11-10-101 et seq., the Arkansas Teacher Retirement System Act, § 24-7-201 et seq., the Arkansas Public Employees' Retirement System Act, § 24-4-101 et seq., the State Police Retirement System Act, § 24-6-201 et seq., *or under laws providing for old age assistance grants, child welfare grants, blind pensions, or any laws of a similar nature. . . .*

Ark. Code Ann. § 19-10-204 (Supp. 1997)(emphasis added). *See* 1949 Ark. Acts 462 § 2. Viewing the plain language of this section, which has remained virtually the same for approximately fifty years, Medicaid reimbursement is unquestionably "similar" to laws providing for old-age assistance grants, child-welfare grants, and blind pensions.

The fact that the General Assembly has waived sovereign immunity for Wadley's Medicaid claim under this statute is bolstered by the fact that Wadley itself first made its claim for an adjustment in Medicaid reimbursement to DHS and sought an appeal within DHS after that appeal was denied. In its complaint filed in the Claims Commission, Wadley described the sequence of events:

> 15. On May 11, 1995, Wadley, through its counsel Vinson & Elkins, requested an adjustment in the amounts it was paid in fiscal years 1992, 1993, and 1994 pursuant to its Provider Agreement with DHS. DHS did not respond. After numerous telephone calls and letters to DHS, on June 28, 1995, Wadley, through its counsel, Mitchell, Williams, Selig, Gates and Woodyard, P.L.L.C., again requested an adjustment to the payments in 1992, 1993, and 1994. DHS did not respond. After further demand, on July 19, 1995, Breck Hopkins of DHS Office of

Chief Counsel responded by letter of July 26, 1995, and denied any consideration of Wadley's request.

16. Wadley then requested reconsideration of the Hopkins' decision by following the appeals process found in Section 231.7 of the Provider Manual. By letter of September 14, 1995, DHS refused to allow the appeal stating that it was time barred and should have been brought in 1992 when the rate for out-of-state hospitals was reduced to $400.

It is only after the door was closed to Wadley's appeal within DHS that Wadley chose another route, which was its complaint before the Claims Commission. But, again, the Claims Commission has no jurisdiction over Medicaid claims. This is a matter intended to be heard within the executive branch under § 19-10-204, with judicial review of the agency decision clearly residing in circuit court under the Administrative Procedure Act. *See* Ark. Code Ann. § 25-15-212 (Repl. 1996).

The reason that the General Assembly determined to keep hands off of these Medicaid claims is obvious. Medicaid reimbursement is a matter of considerable complexity, and DHS has the requisite expertise to decide these Medicaid questions. We have faithfully acknowledged such expertise and acumen within our state agencies. *See, e.g., Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998); *Arkansas Health Servs. Agency v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998). To be sure, a claim against the State based on a contract must be submitted to the Claims Commission. Ark. Code Ann. § 19-10-208(c) (Repl. 1994). But to contend that this is merely a claim for breach of contract is a terrible understatement. Wadley's claim requires interpretation of federal law and regulations, declaration of what constitutes the supreme law of the land, an alleged violation of the Equal Protection Clause of the Fourteenth Amendment, and judicial review of a state agency decision.

Because the Claims Commission, which is an arm of the legislative branch, is attempting in this case to exercise powers reserved by § 19-10-204 to the executive branch, the instant case is materially different from *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990), *cert. denied*, 498 U.S. 824 (1990), and *Wells v. Purcell*, 267 Ark. 456, 592 S.W.2d 100 (1979), where this court held that writs of certio-

rari and mandamus could not issue to the General Assembly because the challenged conduct fell squarely within the exercise of legislative powers.

A writ of certiorari lies to correct proceedings erroneous on the face of the record, when there is no other adequate remedy. *King v. Davis*, 324 Ark. 253, 920 S.W.2d 488 (1996); *Lupo v. Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1993); *Sexton v. Supreme Court*, 297 Ark. 154-A, 761 S.W.2d 602 (1988); *Bridges v. Arkansas Motor Coaches*, 256 Ark. 1054, 511 S.W.2d 651 (1974). It is available in the exercise of superintending control over a tribunal which is proceeding illegally where no other mode of review has been provided. *Id.*

The Claims Commission is assuming what is clearly a matter to be decided by DHS under § 19-10-204, subject to judicial review. It has no jurisdiction over the case. I would grant the petition for writ of certiorari.

THORNTON, J., joins.