The Honorable Tom Allen, Chair Home Inspector Advisory Board c/o Office of the Secretary of State Attn: Corporations Division State Capitol Little Rock, AR 72201-1094
Dear Chairman Allen:
I am writing in response to your request for my opinion on the following questions:
 1. Does the Arkansas Home Inspectors Registration Act (the" Act"), A.C.A. § 17-52-101 et seq. (Supp. 1999), apply to Mr. Bill J. White?
 2. Does the Home Inspector Advisory Board, the Secretary of State or some other state agency have authority to grant exceptions to the Act?
The materials you have supplied me reflect that Mr. White is employed as the Chief Inspector of Interstate Inspection Services, Inc., a business that "conducts inspections of manufactured homes and their installation and documents findings." Mr. White has requested a waiver of the registration requirement and has offered the following facts as support:
 1.) All of the inspections that I conduct deal only with manufactured (mobile) homes and their installation;
 2.) The inspections are done to determine compliance with the Federal Manufacturer Home Construction and Safety Standards and compliance with the installation requirements and regulations of the jurisdiction in which the homes are located;
 3.) The inspections are not done as a prelude to any known, pending sale of the home to a potential buyer;
 4.) The inspections are done at the request of attorneys, or their clients, for the purpose of my presenting testimony in state or federal court as to the true and actual condition of the home and/or its installation;
 5.) As can be seen from the attached resume, my field of training, experiences, and expertise is limited to manufactured housing; and,
 6.) The Home Inspectors Act which requires the licensee to either pass Real Estate Inspection testing through a state board or ASHI, and none of that training or testing would relate to, or improve the results of, the inspections that I do.
You have listed in your cover letter the following facts as having been deemed possibly relevant by the Board in its previous deliberations:
 1. The definition of a "home" as related to the Act is all-encompassing. [§ 17-52-102(3)]
 2. Although the Act does not discuss "real property," we noted that in the normal course of events, a manufactured home is not "real property" until it is placed on a permanent foundation and attached to permanent utility lines. Similarly, one could contend that so long as the axles remain on a manufactured home, it is still readily movable, even if breaking away the foundation is necessary before it can be moved.
 3. As noted by Mr. White as item 6 in his letter, very little information specifically related to manufactured homes is normally provided in home inspector training seminars or schools. Seminars and short training sessions are offered by some providers but, to our knowledge, there are no in-depth training programs available for inspectors of manufactured homes.
 4. Mobile homes are constructed differently and are much more restrictive with respect to access to their components for inspection than are conventional, site-built homes. Likewise, the components in manufactured homes are often unique to them.
RESPONSE
With respect to your first question, although I consider the question a close call, in my opinion Mr. White is probably not subject to the Act. With respect to your second question, in my opinion the only available exemptions to the Act are those listed at A.C.A. § 17-52-204 (Supp. 1999).
Question 1: Does the Arkansas Home Inspectors Registration Act (the"Act"), A.C.A. § 17-52-101 et seq. (Supp. 1999), apply to Mr. Bill J.White?
The scope of coverage of the Act is set forth at A.C.A. § 17-52-102:
For the purpose of this chapter:
 (1) "Home inspector" means a person who engages in the business of performing home inspections for compensation and, who, in the pursuit of that independent business, undertakes or offers to undertake, or submits a bid to, or contracts or undertakes to inspect, or assumes charge, in a supervisory capacity or otherwise, or inspects the condition of a private residence on behalf of another person.
 (2) "Home inspection" means a physical examination of a home made to identify visible defects or conditions that may adversely affect the function and integrity of the items, components, and systems inspected, or the health or safety of the occupants of the residence. Such inspections may include ancillary buildings.
 (3) "Home or residence" means any dwelling, from one (1) to four (4) units in design intended principally for residential purposes by one (1) or more individuals.
(4) "Person" means any natural person.
 (5) "Equivalent professional home inspector association" means a professional association determined as equivalent to the American Society of Home Inspectors, or the Arkansas Association of Real Estate Inspectors by the Secretary of State and also approved by a majority of the home inspectors registered under this chapter at the time the determination is made.
 (6) "Home inspection report" means a written report prepared for a fee and issued by a home inspector after a home inspection. The report clearly describes and identifies the inspected systems, structures, or components of the dwelling, any defects identified, and any recommendations regarding the conditions observed or recommendations for evaluation by appropriate persons.
When interpreting this statute, or any statute, I must construe the language just as it reads, "giving the words their ordinary and usually accepted meaning in common language." Brimer v. Arkansas ContractorsLicensing Bd., 312 Ark. 401, 405, 849 S.W.2d 948 (1993).
In my opinion, the definition of "home" set forth above probably does not apply to any manufactured home in which "one or more individuals" resides. The difficulty in deciding this question arises from the use of the terms "dwelling" and "units" in the statutory language. In common parlance, the term "dwelling" usually denotes a building, particularly when described in terms of "units." This is not invariably the case, however. Black's Law Dictionary (5th ed. 1979) suggests that in criminal law, at least, a dwelling need not necessarily be a building:
 Dwelling. The house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building or group of buildings occupied by a family as a place of residence. Structure used as a place of habitation.
 In conveyancing, includes all building attached to or connected with the house. In criminal law (e.g., burglary), means a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for us as a human habitation, home or residence.
However, in at least one instance, the Arkansas Supreme Court has suggested that a dwelling must be a building even in a criminal context. In Boston v. State, 330 Ark. 99, 952 S.W.2d 671 (1997), the Court considered whether a taxi driver arrested for carrying a concealed weapon in his vehicle could successfully rely on the following exemption, set forth at A.C.A. § 5-73-120, to avoid conviction:
 (a) A person commits the offense of carrying a weapon if he possesses a handgun, knife, or club on or about his person, in a vehicle occupied by him, or otherwise readily available for use with a purpose to employ it as a weapon against a person.
* * *
 (c) It is a defense to a prosecution under this section that at the time of the act of carrying:
 (1) The person is in his own dwelling, place of business, or on property in which he has a possessory or proprietary interest.
Id. at 100. There is no definition of the term "place of business" in this statute. The taxi driver maintained that the vehicle was his "place of business" and that he was consequently exempt. Id.
The Court rejected the taxi driver's defense based on the following abbreviated analysis:
 Appellant relies on the term "business" in the exemptions to the rule found in subsection (c)(1). However, the specific language of that section exempts certain areas clearly relating to real property.
Specifically, (c)(1) excludes from criminal prosecution the carrying of a gun in a person's "own dwelling, place of business, or on property in which he has a possessory or proprietary interest." The plain meaning of this exception does not include automobiles, nor is there general language which suggests that the list is expandable.
Id. at 101 (emphasis added). The Court's logic appears to have proceeded as follows: because a "dwelling" is self-evidently real estate, a "place of business" must likewise be real estate. Perhaps to ennoble this rather questionable logic, the Court dubbed it "nonscitur a sociis," which it defined as meaning "it is known from its associates." Id. "The practical application," the Court concluded, "means that a word can be defined by accompanying words. See, McKinney v. Robbins, 319 Ark. 596,892 S.W.2d 502, citing Weldon v. Southwestern Bell Telephone Co.,271 Ark. 145, 607 S.W.2d 395
(1980)."
Whatever the merits of the association drawn between words in Boston, the case clearly establishes that the Court feels a dwelling can only be real estate. Having myself applied the principle of nonscitur a sociis, it is my opinion that the legislature very likely intended this meaning of the word in adopting the statute. I find it significant that the A.C.A. § 17-52-103(a)(3), which sets forth alternative qualifications that will warrant registering a home inspector, lists as one such alternative "[m]embership or candidacy in, and adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, Inc. (ASHI), the Arkansas Association of Real Estate Inspectors (AAREI) or an equivalent professional home inspection association." A.C.A. § 17-52-103(a)(3)(A). The materials you have provided me suggest that neither of the referenced organizations has much bearing on the type of inspections Mr. White conducts, thus strongly suggesting that the General Assembly did not intend through this legislation to regulate Mr. White's profession. This suggestion is only reinforced by the fact that one alternative statutory qualification involves "successful completion of at least ninety (90) core hours of a real estate inspection educationprogram" (emphasis added). A.C.A. § 17-52-103(a)(3)(D); see attached Ark. Op. Att'y Gen. No. 98-262, discussing this requirement. This alternative confirms that the term "dwelling" as a synonym for "home" refers to real estate. Finally, I am struck by the fact that Mr. White's industry is regulated by an entirely distinct set of standards — the Federal Manufacturer Home Construction and Safety Standards. I do not believe the legislature intended to subject an inspector of this distinct variety of abode to a series of regulations and restrictions that apparently have no little or no bearing on his profession. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbroughv. Witty, 336 Ark. 479, 484, 987 S.W.2d 257(1999); Lawhon Farm Servs. v.Brown, 335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A ReformParty v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. FleetMortgage Co., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State,317 Ark. 312, 877 S.W.2d 589 (1994); Death and Total Permanent DisabilityTrust Fund v. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
Nothing in the foregoing is meant to suggest that Mr. White's activities invariably and necessarily lie outside the scope of activities covered by the Act. As you acknowledge in your request, mobile homes are frequently affixed to real property to an extent that effectively renders them "real estate." The determination of when this transformation occurs is one of fact that I am neither situated nor authorized to undertake. In my opinion, establishing regulations and enforcement mechanisms addressing this issue is an undertaking best left to the Board you chair. However, I will opine that if Mr. White inspects a manufactured home that has been sufficiently affixed to the earth to qualify as real estate, he will be subject to the requirements of the Act.
Moreover, given the description of Mr. White's duties quoted above, if the object of his inspection qualifies as a "home," he will clearly be engaged in the profession of "home inspection," since he regularly examines structures for defects and produces reports that fall squarely within the definition of "inspection report" set forth in the statute.
Question 2: Does the Home Inspector Advisory Board, the Secretary ofState or some other state agency have authority to grant exceptions tothe Act?
This question would appear to be moot as a practical matter in light of my response to your first question. However, I will note that I do not believe either the Board or any other entity has the authority to grant exceptions to the Act other than those set forth at A.C.A. § 17-52-204, none of which applies to Mr. White. In Ark. Op. Att'y Gen. No. 92-160, attached hereto, this office concluded that licensees of the LP Gas Board could not be considered exempt when a statute set out various exemptions that did not include them. See Gosnell v. State, 284 Ark. 299,681 S.W.2d 385 (1984) ("the legislature's affirmative statement of the effect of a statute is an implied denial of its having some other effect."). The opinion further pointed out that no administrative agency has the power to legislate, which would be the effect of any agency carving out exceptions other than those explicitly authorized by the General Assembly.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures